**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 1:13-cv-21525-JIC

LESLIE REILLY, an individual,
on behalf of herself and all others similarly
situated,

      Plaintiff,

v.

AMY'S KITCHEN, INC.,
a California corporation,

      Defendant.

_____/

**DEFENDANT AMY'S KITCHEN, INC.'S MOTION TO DISMISS**

    Defendant, Amy's Kitchen, Inc., ("Amy's Kitchen") by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Class Action Complaint ("Complaint") in this case.

**I.    INTRODUCTION**

    This case is based on the false premise that significant numbers of purchasers of vegetarian prepared frozen and canned foods made with organic ingredients read and relied upon the ingredient list in making their purchase decision. These consumers were allegedly misled by the name "organic evaporated cane juice" ("ECJ") used to identify a sugar cane sweetener in those products even though the packages clearly declared the total sugars in the products.

    Plaintiff, an alleged purchaser of three of Amy's Kitchen's vegetarian entrees made with organic ingredients, complains that a minor ingredient identified as ECJ should have been listed in the ingredient statements of those foods as "sugar." In doing so, Plaintiff does not reveal what, if anything, she thought that ingredient was when she bought each of the three products.

Plaintiff further claims that ECJ cannot be called "juice" even though the obvious meaning of *evaporated* cane juice is that it is a solid made from the juice of the sugar cane plant, which is exactly what it is.   Finally, Plaintiff claims that Amy's Kitchen's products with ECJ are misbranded in violation the Florida Food Safety Act ("FFSA") because they did not identify ECJ as its "common or usual" name.   However, the ingredient has been called ECJ since it was first introduced in the mid-1990's and has been so identified in thousands of products, especially in the "natural" and "organic" market segments by some of America's largest food companies such as Kellogg, Kraft, and Trader Joe's.

Plaintiff's only support for her claims is her personal opinion and a 2009 *draft* Food and Drug Administration ("FDA") Guidance.   Plaintiff mischaracterizes the draft as the "FDA's published policy" and the FDA's "Guidance," even though the FDA made clear that it was a draft issued for public comment and that it would not be binding on anyone, even the FDA, if and when it might be issued in final form.   In that inchoate document, the FDA suggests for comment that the ingredient should be called "dried cane syrup" which is no more descriptive or informative than ECJ.   Plaintiff asserts violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and unjust enrichment.   Plaintiff fails to state a claim for relief for either.

Six legal principals control this case.   First, government regulators are exclusively vested with the discretionary power to decide whether a food is misbranded under the Federal Food, Drug & Cosmetic Act ("FDCA") and the FFSA.   No private cause of action exists under either act.   Plaintiff may not do indirectly through FDUTPA what she is precluded from doing directly through the FFSA.   Second, the stated purpose of the FFSA is to regulate *intra*state transactions and Amy's Kitchen's business is *inter*state.   Third, the Court should defer to the FDA under the

primary jurisdiction doctrine, as the court recently did in *Hood v. Wholesoy & Co.*, No. 4:12-cv-05550-YGR, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013), since FDA has the proper identification of ECJ under consideration.  Fourth, ECJ is the common or usual name for the product.  Fifth, the use of the term ECJ would not mislead a reasonable consumer because it obviously involves a sugar cane-based sweetener, could not physically be a liquid juice in these products, and no reasonable consumer purchasing these vegetarian prepared foods made with organic ingredients could be aggrieved as alleged.  Finally, unjust enrichment is not available because Plaintiff has pled an adequate remedy at law, a violation of FDUTPA.

## II.    BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff purports to represent a class of Florida consumers who bought any of the approximately sixty Amy's Kitchen prepared food products containing the sweetener ECJ since April 30, 2009.  *See e.g.* Compl., (D.E. No. 1), ¶¶ 1, 13.  Plaintiff herself claims to have bought three Amy's products "during the class period" without revealing the date, location, number, or reason of any such purchases.  *See id.*, ¶ 5.  The three products allegedly are:  "All American [Veggie] Burger," made with organic vegetables & grains; "Amy's Pizza Margherita" made with organic flour and tomatoes; and "Light & Lean Black Bean & Cheese Enchilada" made with organic vegetables & black beans.  *See id.*  The package ingredients statement for each of these three products lists "organic evaporated cane juice" as an ingredient and each Nutritional Facts panel on those packages declares the total grams of "sugars" in the product next to the ingredient list. *See id.*, ¶ 14.

Plaintiff seeks injunctive relief and damages under FDUTPA, Fla. Stat. §§ 501.201 *et seq.*, based upon her allegations that (1) Amy's Kitchen has "misrepresented to consumers that its products contain ECJ even though 'evaporated cane juice' is not a 'juice' at all;" (2) ECJ "is

not the common or usual name of any type of sweetener, or even any type of juice, and the use of such a name is false and misleading;" and (3) the products were "misbranded" under Section 500.04 of the FFSA because their labeling was "false or misleading" and therefore, they could not be legally sold and "are legally worthless." Comp., ¶¶ 2, 21. According to Plaintiff, Amy's Kitchen should have identified the ECJ as "sugar," apparently meaning refined white sugar. *Id*., ¶¶ 10, 15. Plaintiff also seeks disgorgement of Amy's Kitchen's allegedly "millions of dollars from the sale of its products with ECJ that it would not have otherwise earned." *Id*., ¶ 4. According to Plaintiff, Amy's Kitchen was able to earn these "millions" because evaporated cane juice appears to consumers to be "healthier than a product that contains 'sugar' as an ingredient," which increased sales and allowed Amy's Kitchen to charge a "premium." *Id*., ¶¶ 12, 20, 22. Plaintiff improperly relies on the FDA's 2009 draft Guidance for Industry[1], a proposal that has not been finalized and that has no probative value.[2]

Amy's Kitchen is a family-owned business that has been in operation since 1987. *See* Amy's Kitchen, http://www.amys.com/about-us/the-family, Mot. Jud. Not. at Ex. 36. It is a purveyor of frozen and canned vegetarian foods made with organic fruits, vegetables, grains, and hormone free dairy through supermarkets and other retail outlets. *See id*. Amy's Kitchen products generally are not made with GMOs (genetically modified organisms) or dairy products from cows fed growth hormones. *See e.g.*, Compl., ¶ 14.

---

[1]   Amy's Kitchen has separately and contemporaneously filed a Motion for Judicial Notice ("Mot. Jud. Not.") for the Court to notice the relevant documents and websites cited to in this Motion to Dismiss. Copies of the relevant documents are attached to that motion.

[2]   Because Plaintiff referred to the Guidance for Industry: Ingredients Declared as Evaporated Cane Juice; Draft Guidance, 74 Fed. Reg. 51610 (Oct. 7, 2009) (hereinafter "Draft Guidance" and attached hereto as Ex. 1 and Mot. Jud. Not. at Ex. 1) in her Complaint (e.g. ¶ 17), the court may consider it in analyzing the Motion to Dismiss. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Evaporated cane juice is a sweetener made from the juice of the sugar cane plant.  *See* Dec. 4, 2009 Letter from Florida Crystals to FDA, p. 2, Mot. Jud. Not. at Ex. 2.  Florida Crystals Inc., a company owned by Domino Sugar, first developed and marketed ECJ in the mid-1990's. *Id*.  As of 2009, ECJ was included in approximately 9,000 different products.  *Id*.

## III.   LEGAL BACKGROUND

### A.   Rule 12(b)(6) Standard

The Court should grant this motion to dismiss because, accepting the facts alleged in the Complaint to be true, these facts are insufficient "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *See  Lopez v. Garcia-Montes*, No. 08-21656-CIV, 2008 WL 2782738, at *2 (S.D. Fla. July 16, 2008) (citing *Twombly*, 550 U.S. at 555); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).  Rather, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, the Court may consider documents referred to in the complaint, public records, matters of which a court may take judicial notice, and records of government agencies without converting the motion to one for summary judgment.  *See e.g., La Grast v. First Union Securities, Inc.,* 358 F.3d 840, 845 (11th Cir. 2004); *Day v. Taylor,* 400 F.3d 1272 (11th Cir. 2005); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds; *Swierkiewicz v. Sorema, N.A*., 534 U.S. 506, 511 (2002).  This Court has recognized that "[t]he Eleventh Circuit has held that, when considering a 12(b)(6) motion to

dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Makro Capital of Am., Inc. v. UBS AG.* 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005).  The Court may take judicial notice "at any stage of the proceeding." Fed. R. Evid. 201(d).

## IV.    ARGUMENT

### A.    Plaintiff Lacks Article III Standing

In order to have standing, a plaintiff must plead an injury in fact*.  See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1353 (S.D. Fla. 2012).  She may not bring an action for relief based on products that she did not buy.  *Chin v. General Mills*, No. 12-2150, 2013 WL 2420455, at *3 (D. Minn. June 3, 2013) (and cases cited therein).  FDUTPA requires that Plaintiff must have suffered a loss or otherwise been aggrieved; Plaintiff cannot have suffered a loss or been aggrieved by products she did not purchase.  Fla. Stat. §§ 501.211(1)-(2).

Plaintiff purchased only three of the sixty products that she challenges and for which she seeks relief.  She cannot prove that she "suffered any injury or lost money or property with respect to those products" she did not buy.  *Carrea v. Dreyer's Grand Ice Cream*, No. 3:10-cv-01044-JSW, 2011 U.S. Dist. LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011), aff'd, 475 F. App'x 113 (9th Cir. 2012); *Larsen v. Trader Joe's Co.*, No. 11-5188 SI, 2012 WL 5458396, at *4-5 (N.D. Cal. June 14, 2012).  Even though all challenged products included ECJ, material differences—such as the type of product, the function of the ingredient within specific products, label graphics, and the presence of other sweeteners and total sugars—exist among the sixty products, resulting in the requirement that Plaintiff would have had to purchase every product that she seeks to challenge.  *See Khasin v. R.C. Bigelow, Inc.*, No. 3:12-cv-02204, 2013 U.S. Dist. LEXIS 77084, at *10-11 (N.D. Cal. May 31, 2013).

### B. Plaintiff Fails to State a *Per Se* Claim for Relief under FDUTPA for "Misbranding"

#### 1. Implied Preemption

Plaintiff claims a *per se* violation of FDUTPA because Amy's Kitchen allegedly violated the FFSA by misbranding its products.  Compl., ¶¶ 32, 38.  A plaintiff may allege a FDUTPA claim as a "*per se* violation premised on the violation of another law proscribing an unfair or deceptive practice."  *Hap v. Toll Jupiter Ltd. P'ship*, No. 07–81027–CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 28, 2009).  But to deem any alleged FFSA labeling violation a *per se* violation of FDUTPA would be an "overly broad and unfounded reading of the statute…."  *Double AA Int'l Inv. Grp., Inc., v. Swire Pac. Holdings, Inc.*, 674 F. Supp. 2d 1344, 1358 (S.D. Fla. 2009) (rejecting FDUTPA *per se* violation because underlying statute was not designed to prevent unfair or deceptive trade practices).  Plaintiff does not state a *per se* claim for relief because the determination of whether a food product is "misbranded" is a discretionary decision vested solely in government regulators.  *See e.g.*, Fla. Stat. §§ 500.178 & 500.179.

Moreover, there is no private cause of action under the FDCA.  *See e.g., Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939, 944 (E.D. Wis. 2008). Private litigants cannot bring a claim under a state law that in substance seeks to enforce the FDCA, as such claims are impliedly preempted.  *See Loreto v. Procter & Gamble Co.*, No. 10-4274, 2013 WL 645952, at *2 (6th Cir. Feb. 22, 2013); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d  1282, 1290-91 (C.D. Cal. 2008).  In order to avoid implied preemption, a claim "must 'rely [ ] on traditional state tort law which had predated the federal enactments in question. . . ."  *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001)).

Plaintiff bases her claim of misbranding on alleged federal law; in that regard, Plaintiff improperly cites only the 2009 FDA Draft Guidance to support her claim. Furthermore, the FFSA mirrors the FDCA and Florida has incorporated, by reference, FDA's regulations, but not the FDA Draft Guidance. In fact, the FFSA is meant to be "uniform . . . and administered so far as practicable in conformity with the provisions and regulations issued under the . . . Federal Food, Drug, and Cosmetic Act." Fla. Stat. § 500.02(2). As such, the FFSA in effect enforces the FDCA. Furthermore, Plaintiff's misbranding claim is not a traditional state tort that pre-dated the FDCA. Therefore, to the extent that Plaintiff seeks to establish a violation of FDUTPA upon a finding of a *per se* violation of the food act, that claim is impliedly preempted. *Cf. Moss v. Walgreen Co*., 765 F. Supp. 2d 1363, 1366 (S.D. Fla. 2011) (citation to FDA warning letter did not demonstrate suit was based on FDCA because plaintiff's suit alleged that health benefit claims were "not valid," an issue that was not addressed in the "FDA Letter").

## 2. There is No Private Cause of Action to Enforce the FFSA

Plaintiff's misbranding claims are an impermissible attempt to create a private cause of action under the FFSA. The Florida Department of Health and the various Florida state attorneys have the exclusive authority to enforce the FFSA. *See* Fla. Stat. §§ 500.171, 500.178. Additionally, the Act provides that state authorities have the discretion to provide written notice or warning of "minor violations." *Id*. at § 500.179. And, as with the FDCA, the FFSA provides no private cause of action. *See T.W.M. v. Am. Med. Sys., Inc*., 886 F. Supp. 842, 845 (N.D. Fla. 1995). Plaintiff may not use FDUTPA to avoid this statutory limitation. A Florida trial court sustained this principal in *Forum v. Boca Burger, Inc*. *See* 912 So. 2d 561, 565 (Fla. Sup. Ct. 2005) (notes but does not address the trial court's opinion).[3]

---

[3] Defendant has been unable to obtain the trial court's ruling because it is no longer in the Court files. This Court did not address this question in *Guerro v. Target Corp.*, 889 F. Supp. 2d 1349

Additionally, the applicable purpose of the FFSA is to "promote the public welfare by protecting the consuming public from injury by merchandising deceit, flowing from *intrastate* commerce in food." *Id*. at § 500.02 (emphasis added). Amy's Kitchen is involved in the interstate commerce in selling food to grocery stores and other outlets. Amy's Kitchen was not involved in a direct intrastate transaction with Plaintiff.

Furthermore, the FFSA is meant to be uniform with the Federal Trade Commission Act ("FTC Act"), to the extent that it expressly prohibits the false advertisement of food. *Id*. at § 500.02(2). Under FFSA, "advertisement" does not include "labeling," which is at issue here. *Id*. at § 500.03(1)(a).[4] Since FDUTPA is based on the FTC Act, an FFSA violation relating to food labeling, such as is alleged here, is reserved to the State.[5]

### C. The Court Should Invoke the Primary Jurisdiction Doctrine and Defer to the FDA's On-Going Process Relating to the Identification of ECJ

Because the essential question in this litigation—whether ECJ is a proper name for the ingredient in question—is currently under consideration by the FDA and because the FDA is the agency appointed by Congress to make such determinations, the doctrine of primary jurisdiction requires that this case be dismissed. *See Hood v. Wholesoy & Co.*, No. 4:12-cv-05550-YGR,

---

(S.D. Fla. 2012), which alleged that the identification of Target's Honey was false and misleading because it was not consistent with the state standard of identity for honey. There is no state standard of identity implicated in this case.

[4] Plaintiff asserts that Amy's Kitchen "advertises and markets many of its products as having ECJ," Compl., ¶ 10, without citing any specific advertisement or marketing initiative. The court should not rely on these bare assertions. *See Iqbal*, 556 U.S. at 678 (finding complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").

[5] The FTC has ceded primary responsibility to regulate food labeling to the FDA since 1954. *See* FTC Enforcement Policy Statement on Food Advertising (May 1994), Introduction, available at http://www.ftc.gov/bcp/policystmt/ad-food.shtm, Mot. Jud. Not. at Ex. 4. ("Since 1954, the FTC and the FDA have operated under a Memorandum of Understanding under which the Commission has assumed primary responsibility for regulating food advertising, while FDA has taken primary responsibility for regulating food labeling.").

2013 WL 3553979, *5 (N.D. Cal. July 12, 2013); *Astiana v. Hain Celestial Grp*., 905 F. Supp. 2d 1013, 1016-17 (N.D. Cal. 2012).

On October 7, 2009, the FDA announced the publication of its draft guidance and asked for written comments on the draft by December 7, 2009.  *See* 74 Fed. Reg. 51610 (Oct. 7, 2009). The intent of the draft guidance was "to advise industry of FDA's view that the common or usual name for the solid or dried form of sugar cane syrup is 'dried cane syrup' and that sweeteners derived from sugar cane syrup should not be declared on food labels as evaporated cane juice because that term falsely suggests that the sweeteners are juice."  *Id.*   The FDA received comments and the matter is still under consideration at the FDA.  *See* Docket No. FDA-2009-D-0430, http://www.regulations.gov/#!docketDetail;D=FDA-2009-D-0430, Mot. Jud. Not. at Ex. 5.

"'Primary jurisdiction'…applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.…"  *United States v. W. Pac. R.R.,* 352 U.S. 59, 63-64 (1956) (omissions to original); *see also Smith v. GTE Corp.,* 236 F.3d 1292, 1298 n.3 (11th Cir. 2001). "The main justifications for the doctrine are the expertise of the agency and the need for a uniform interpretation of a statute or regulation."  *Cnty. of Suffolk v. Long Island Lighting Co*., 907 F.2d 1295, 1310 (2d Cir. 1990).  When the doctrine applies, the courts refer these matters to the agency for determination and either retain jurisdiction or "if the parties would not be unfairly disadvantaged,…dismiss the case without prejudice."  *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993).

The primary jurisdiction of the FDA is clear, and the court should defer to the FDA's on-going process as the court did in *Hood*.  2013 WL 3553979 at *5.  The issue of the proper identification of "evaporated cane juice" requires the expertise of the FDA.  *Id*. at *4-5.  For instance, is the product produced from a "sirup" as the FDA originally thought, even though it apparently goes through a crystallization process?  Is calling the product "dried cane sirup," as the FDA recommended, really meaningfully different from "evaporated cane juice" to consumers?  Has the continued use of the term "evaporated cane juice" since the mid-1990s, and for four years after the FDA's draft Guidance, resulted in "evaporated cane juice" becoming the usual or common name for the product, if it was not prior to that time?  The FDA has these issues under consideration.  The Court should defer to the FDA's expertise and dismiss this case. *See Hood,* 2013 WL 3553979 at *5; *see also Cox v. Gruma Corp.*, No. 4:12-cv-6502, 2013 U.S. Dist. LEXIS 97207, at *2 (N.D. Cal. July 11, 2013) (staying the case and referring it to FDA for determination of scope of term "natural"); *Astiana*, 905 F.Supp.2d at 1016-17 (dismissing challenge to the use of the words "all natural," "pure natural," and "pure, natural & organic" on cosmetic labeling).

### D.    FDA's Draft Guidance May Not Be Relied Upon by Plaintiff

Plaintiff relies on what she mischaracterizes as "FDA's published policy" and the FDA Guidance.  Compl., ¶¶ 16-19.  In fact, Plaintiff seeks to rely on a draft Guidance that is still under consideration by FDA, and thus has no probative value and may not be relied upon.

The October 7, 2009, Draft Guidance was "distributed for comment purposes only."  *See* 74 Fed. Reg. 51610 (Oct. 7, 2009); Draft Guidance, Ex. 1, p. 1.  The Federal Register notice states that when the draft guidance is *finalized*, it will represent FDA's current thinking.  74 Fed. Reg. 51,610.

But the FDA has not yet finalized the draft, a necessary step before it can be "implemented." *See* 21 C.F.R. § 10.115(g)(iv)(D). Even when finalized, a guidance is not binding on FDA or the public. *See id.* at § 10.115(d); *see also In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 303 (E.D. Pa. 2011). Guidances are not final agency action and do not constitute an agency determination. *Cf. Cody Labs, Inc. v. Sebelius*, 446 F. App'x. 964, 969 (10th Cir. 2011) ("an FDA warning letter does not constitute final agency action").

Even if the draft Guidance represented the FDA's position (which it expressly does not), the FDA's belief that a product is misbranded is not conclusive. *See Wyeth v. Levine*, 555 U.S. 555, 570 (2009). The FDA "has no authority to declare, *ipse dixit*, that a label is false and misleading. Rather, the government must initiate an enforcement action to establish that a drug is in fact misbranded. *Witczak v. Pfizer*, 377 F. Supp. 2d 726, 730 (D. Minn. 2005). And the FDA must prove that the label is misleading by a preponderance of the evidence. *See United States v. 119 Cases, More or Less*, 231 F. Supp. 551, 558 (S.D. Fla. 1963). Ultimately, the FDA's belief is not admissible evidence. *See e.g.* Fed. R. Evid. 802; *see also Cytosport, Inc. v. Vital Pharm., Inc.,* 894 F. Supp. 2d 1285, 1294 & 1297 (E.D. Cal. 2012) (holding FDA warning letter is not evidence of FDA's position and thus, there was no admissible evidence of mislabeling).

Florida has not adopted the FDA Draft Guidance. Florida has only adopted certain published FDA regulations issued in 2002 and 2003 prior to the 2009 draft. *See* Fla. Admin. Code Ann. r. 5k-4.002(1)(d) (2003). Finally, the concerns upon which the subject draft Guidance is based are clearly inapplicable to this case. The draft makes clear that the FDA's concern was about the use of ECJ in juice products that were labeled "100% juice." No such products or claims are involved here.

### E.    Plaintiff Fails to State a Claim under FDUTPA for Not Identifying ECJ as "Sugar"

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  Consumer claims under FDUTPA require three elements: (1) a deceptive or unfair trade practice; (2) causation; and (3) actual damages.  *Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010).  A deceptive act occurs where there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, *to the consumer's detriment*."  *Zlotnick v. Premier Sales Grp., Inc*., 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 S. 2d 773, 777 (Fla. 2003) (emphasis added).

Plaintiff failed to plead any facts supporting her allegation that identifying the  ingredient as "evaporated cane juice" was misleading.  Plaintiff asserts, without any factual support, that the ingredient should be called "sugar."  Moreover, Plaintiff fails to provide any facts or details "that would allow the court to draw the reasonable inference" that consumers do not understand that ECJ is a sugar cane sweetener.  *See Guerrero v. Target Corp*., 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012); *see also*, *Chin*, 2013 WL 2420455 at *9 (dismissing state consumer protection counts based on a plaintiff's failure to plead how she was deceived and what she thought was the meaning of "100% Natural").

Plaintiff must plead sufficient facts showing that the unfair or deceptive practice that defendants allegedly committed actually damaged her; that is, that she has been aggrieved. *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007); *see also Shibata v. Lim,* 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000); Fla. Stat. § 501.211(1) ("anyone aggrieved by a violation of this part" may seek an injunction) and § 501.211(2) ("[i]n any action brought by a

person who has suffered a loss" damages may be recovered).  "But FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment."  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. Dist. Ct. App. 2006). Neither of Plaintiff's allegations that "Amy's Kitchen uses the term ECJ to make its product appear healthier," (Compl., ¶ 12),  or that she "paid a premium price" for products with ECJ (*Id*., ¶ 22) give rise to a valid FDUTPA claim.  Plaintiff does not assert that she or anyone else understood the product to be "healthier" or why "organic evaporated cane juice" appears healthier than "organic sugar" or, for that matter, why organic dried cane syrup would so appear. Additionally, Plaintiff fails to offer any comparison against which the alleged premium price she paid can be measured.  Presumably, Plaintiff claims that the retail price for Amy's Kitchen products with an ingredient listing of "organic sugar" would have been less than the actual price charged for the product listing "organic evaporated cane juice."

A reasonable consumer who is concerned about the sugar content of food products easily may determine the total sugars content of Amy's Kitchen's products before purchasing them. Congress requires food manufacturers to list the total amount of "sugars" in a product in the Nutrition Facts Panel, irrespective of the source.  21 U.S.C. § 343(q)(1)(D) (2012); 21 C.F.R. § 101.9(c)(6)(ii) (2013).  All of the targeted Amy's Kitchen products comply with that requirement.  *See e.g*., Compl., ¶ 14.  The conspicuous declaration of total sugars, which is located next to the ingredient statement on the box pictured in the Complaint, is more prominent and easier to locate on the packaging than the listing of ECJ.  *Id*.

Plaintiff, if she examined the ingredient list, had to know that there were added sweeteners in the products she bought.  A reasonable consumer would recognize "organic evaporated cane juice" as a sugar cane based sweetener.  Additionally, the Amy's Kitchen pizza

Plaintiff allegedly bought contains by weight more organic honey, which is a sweetener, than it does ECJ.  Compl., ¶ 14.  Plaintiff was aware that there were added sweeteners that constituted "sugars" in the pizza product, yet she still bought it.

### F.    Plaintiff Fails to Plead Facts from Which Anyone Could Calculate Damages

Plaintiff has also failed to plead any facts from which one could plausibly calculate damages.  Here, Plaintiff merely claims she suffered monetary losses associated with the "purchase price of the product and/or the premium paid by Plaintiff and the Class for said products."  Compl., ¶ 39.  Plaintiff further claims "price inflation" due to the alleged identification of "evaporated cane juice;" that is, she alleges that Amy's Kitchen was able to charge more for the product.  However, in the context of the market for retail groceries, as with the market for pharmaceutical drugs, "such damages are too speculative to constitute an injury-in-fact under Article III."  *Prohias*, 485 F. Supp. 2d at 1336-37.

This case is different from *Smith v. Wm. Wrigley, Jr. Co*., 663 F. Supp. 2d 1336 (S.D. Fla. 2009) and *Moss v. Walgreen Co.,* 765 F. Supp. 2d 1363, 1368 (S.D. Fla. 2011).  Both *Smith* and *Moss* involved an allegation that the product offered a positive benefit that was not delivered.  In each case, the plaintiff offered a comparison with alternative products as support for the claim that the defendant was able to charge a premium price because of the alleged benefit.  For instance, in *Moss*, the complaint alleged that the "Full Action" version of a product with an associated health benefit claim was sold for a quarter more than the "Original" product.  765 F. Supp. 2d at 1368.  Unlike *Smith* and *Moss*, this case does not involve a claimed benefit that Amy's Kitchen allegedly failed to deliver, and Plaintiff does not provide a point of comparison for the alleged premium price.

Finally, Plaintiff asserts that the product was of no value because it was "misbranded."  Plaintiff's claim is without merit as a matter of law.  She allegedly purchased, and presumably

consumed, the subject food products, which were healthful and nutritious.  She makes no claim that the products were harmful in any way.  Certainly, she received value from her purchase and was not harmed.  *See Bezdek v. Vibram USA Inc*., No. 1:12-cv-10513-DPW, 2013 WL 639145, at *4-5 (D. Mass. Feb. 19, 2013).  Therefore, the Court should follow the rationale set out in *Prohias* and dismiss the Complaint.

> ### G.    No Reasonable Consumer Would Find the Listing of ECJ on Amy's Kitchen's Labels for Vegetarian, Organic Prepared Foods Misleading

As the labels demonstrate, any reasonable consumer considering the purchase of an Amy's Kitchen's product would be a consumer interested in a vegetarian prepared food made with organic ingredients.  This Court should find that Amy's Kitchen's use of the ingredient identification "evaporated cane juice" would not mislead a reasonable consumer into believing that the prepared food contained "juice" or that there was no added sugar cane-based sweetener. This is a finding that is within the province of the Court.  *See Rooney v. Cumberland Packaging Corp*., No. 3:12-cv-0033, 2012 WL 1512106, at *4 (S.D. Cal. April 16, 2013) (dismissing claim that "Sugar in the Raw" was misleading consumers into thinking that it was raw sugar); *Serbel v. Persico, Inc*., No. 4:09-cv-04456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (no reasonable consumer would think that Crunch Berries cereal contains real berries); *McKinnis v. Kellogg USA*, No. 2:07-cv-02611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (no reasonable consumer would think that FROOT LOOPS contain fruit).  Therefore, the Court must dismiss Plaintiff's claim that Amy's Kitchen's labels are false or misleading.

> ### H.    Calling the Ingredient ECJ Is Literally True and Therefore Is Not Deceptive

The ingredient identified as "evaporated cane juice" is, in fact, evaporated cane juice. The FDA acknowledges that it is made from the juice or extract of the sugar cane plant.  *See* Draft Guidance, Ex. 1, p. 4 ("juice or extract of sugar cane").  The moisture is then evaporated

from the cane juice to make a solid product.  "Evaporated" means "to draw moisture from, leaving only the dry solid portion."  Webster's II New Riverside University Dictionary 447 (1984).  Thus, the Amy's Kitchen ingredient statement is literally true and not false or misleading.  Similarly, concentrated fruit juice (whether in liquid or dried form) is considered to be an added sugar under the FDA regulations and is properly declared in ingredient statements as a "juice" concentrate, even if it is a dried ingredient that has been highly processed.  21 C.F.R. § 101.30 (2011).  FDA recognizes similar names such as "dried glucose sirup."  *Id*. at § 168.121.

Furthermore, two United States governmental agencies have recognized evaporated cane juice as the name of the product.  First, the U.S. Patent and Trademark Office ("USPTO") registered "evaporated cane juice" as a word mark.  *See* Registration No. 3,050,243 (filed Jan. 5, 2005), Mot. Jud. Not. at Ex. 6.  The mark has been in use since 1996 and was first registered on January 5, 1999.  *See* Serial No. 75,332,683 (filed July 29, 1997), Mot. Jud. Not. at Ex. 7; *see also*, Serial No. 77,059,688 (filed Dec. 7, 2006) (application to register "Maui Brand Evaporated Cane Juice," which was abandoned after Notice of Allowance), Mot. Jud. Not. at Ex. 8.  The original mark was superseded with a new mark that was registered in 2005.  *See* Registration No. 3,050,243, Mot. Jud. Not. at Ex. 6.

A trademark must not be deceptive or misdescriptive of the product.  *See* 15 U.S.C. § 1052(a) & (e)(1). Thus, the registration of "evaporated cane juice" by the USPTO supports the conclusion that no reasonable consumer would be misled by the designation.  *See Rooney*, 2012 WL 1512106, at *5.  Second, ten companies were certified by the United States Department of Agriculture ("USDA") National Organic Program as of 2012 as manufacturers of organic evaporated cane juice.   *See* USDA, 2012 List of Certified USDA Organic Operators,

http://apps.ams.usda.gov/nop/ (search "products produced" for "evaporated cane juice"), Mot. Jud. Not. at Ex. 37.

Certainly no reasonable consumer would understand that ECJ was a liquid "juice." The common understanding of the word "evaporated" belies such a claim. The process of evaporation converts a juice to a solid. Furthermore, the FDA refers to sugar cane juice in its regulations and therefore can hardly claim that it is not a "juice." *See e.g*., 21 C.F.R. § 172.165 (an approved additive for use with "sugar cane juice"); *Id*. § 168.130 ("cane sirup" is made from the "juice of sugarcane").

Finally, the federal government has not objected to "juice" as an identifier for a similar product. The Codex Alimentarius Commission, charged with the development of internationally recognized standards and established by the World Health Organization, is in the process of adopting a standard of identify for "Non-Centrifugated Dehydrated Sugar Cane Juice." *See* Codex Alimentarius Commission, CL 2013/9-CS, Request for Comments on the Proposed Draft Standard for Non-Centrifugated Dehydrated Sugar Cane Juice (Apr. 2013).[6] The only objection the United States had to the name was that it preferred "non-centrifugal" to "non-centrifugated." *Id*. The United States made no objection to the inclusion of the word "juice." *Id*. If the identification were false or misleading, it presumably would have objected.

## I.     A Reasonable Consumer Would Understand That ECJ Is a Sugar Cane Based Sweetener

Given the clear meaning of evaporated, a reasonable consumer reading the label of the subject products would understand that "evaporated cane juice" is evaporated juice of a sugar cane and used as a sweetener. The FDA has recognized that ECJ need not be called "sugar."

---

[6] Available at ftp://ftp.fao.org/codex/Circular_Letters/CxCL2013/cl13_09e.pdf, Mot. Jud. Not. at Ex. 3.

The draft Guidance upon which Plaintiff seeks to rely establishes that the FDA did not consider the proper designation of ECJ to be "sugar."  Rather, the FDA asserted that the appropriate name was "dried cane syrup."  *See* Draft Guidance, Ex. 1, at 7.  Therefore, there was no need or requirement to label the ingredient as merely "sugar."

### J.     ECJ Is the Ingredients Usual or Common Name and Therefore Conforms With State Law, Assuming It Is Applicable

The FFSA requires that ingredients be identified by their usual or common name unless there is a standard of identity.[7]  *See* Fla. Stat. § 500.11(g).  There is no state, or federal, standard of identity for "sugar."  The usual or common name of the ingredient at issue is ECJ.  The common or usual name of a food may be a coined term.  21 C.F.R. § 102.5(a).  The common or usual name "shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."  *Id*.  Further, the common or usual name may be established by usage, by regulation, or by a standard of identity.  *Id*. at § 102.5(d).

The name "evaporated cane juice" has been in use since at least 1991 when Billington's used it to identify the good for which it was filing for a trademark.  *See* Serial No. 74,151,104 Mot. Jud. Not. at Ex. 9; *see also* Serial No. 74,151,111 (application for trademark Panelista), Mot. Jud. Not. at Ex. 10.  Furthermore, ECJ has been listed as an ingredient since 1996 and many companies, including Kellogg (Kashi), Trader Joe's, Kraft, and Coca Cola, have used the name.  *See* List of Manufacturers and Products Using ECJ Identified in Court Complaints, attached

---

[7] The FDA has the authority to establish common and usual names by rulemaking.  *See Am. Frozen Food Inst. v. Mathews*, 413 F. Supp. 548, 552 (D.D.C. 1976).

hereto as Ex. 2.[8]  Additionally, as noted above, both the USPTO and the USDA have recognized ECJ as being descriptive of products.

Other than the FDA draft Guidance, which clearly is not evidence, Plaintiff has offered no evidence to the contrary.  Plaintiff offers only her subjective conclusion, which the Court is not bound to accept.  Therefore, the Court should find that Plaintiff has failed to state a claim upon which relief can be granted.

### K.        No Unjust Enrichment Claim May be Stated on These Facts

It is well settled in Florida that unjust enrichment is an equitable remedy and is not available where a plaintiff has an adequate legal remedy.  *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341-42 (S.D. Fla. 2011); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Because Plaintiff has pled a legal remedy for the harm she alleges, a FDUTPA violation, her unjust enrichment claim must fail.  *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1357 (S.D. Fla. 2012).  "[I]f plaintiff cannot prevail on her FDUTPA claim, she cannot prevail on her unjust enrichment claim."  *Id.* (alterations to original).  Plaintiff has an adequate remedy at law, and this Court must dismiss the unjust enrichment claim.  *Id*. at 1356-57; *Jovine*, 795 F. Supp. 2d at 1342.

### V.        CONCLUSION

WHEREFORE, Defendant Amy's Kitchen, respectfully requests that the Court enter an order granting this Motion to Dismiss for Failure to State a Claim, and grant such other and further relief as the Court deems just and proper.

---

[8] This List summarizes the various complaints attached to Mot. Jud. Not. at Exs. 11-35.  *See* Fed. R. Evid. 1006.

Respectfully submitted,

Date:  July 16, 2013                    By: */s/ Sandra J. Millor*_____

    LAWRENCE SILVERMAN
    Florida Bar No. 7160
    lawrence.silverman@akerman.com
    SANDRA J. MILLOR
    Florida Bar No. 13742
    sandra.millor@akerman.com

    **AKERMAN SENTERFITT**
    One S.E. Third Avenue — 25th Floor
    Miami, FL 33131-1714
    Tel: 305-374-5600
    Fax: 305-374-5095

    *-and-*

    DOUGLAS J. BEHR
    District of Columbia Bar No. 163998
    Behr@khlaw.com
    (admitted *pro hac vice*)
    JACQUELYN L. THOMPSON
    District of Columbia Bar No. 988663
    Thompsonj@khlaw.com
    (admitted *pro hac vice*)

    **KELLER AND HECKMAN** LLP
    1001 G Street, N.W., Suite 500 West
    Washington, D.C. 20001
    Tel: 202-434-4213
    Fax: 202-434-4646

    *Attorneys for Defendant Amy's Kitchen, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF this 16th day of July, 2013.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via Notice of Electronic Filing generated by CM/ECF.


_/s/ Sandra J. Millor_____
SANDRA J. MILLOR


**SERVICE LIST:**

Lance A. Harke, P.A.
Florida Bar No. 863599
lharke@harkeclasby.com

Sarah Clasby Engel, P.A.
Florida Bar No. 991030
sengel@harkeclasby.com

Howard M. Bushman, P.A.
Florida Bar No. 0364230
hbushman@harkeclasby.com

**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Telephone: (305) 536-8220
Facsimile: (305) 536-822

*Co-Counsel for Plaintiffs*