UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21525-CIV-COHN/SELTZER

LESLIE REILLY, an individual, on behalf
of herself and all others similarly situated,

  Plaintiff,

vs.

AMY'S KITCHEN, INC., a California corporation,

  Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Amy Kitchen Inc.'s Motion to

Dismiss [DE 17] ("Motion").  The Court has carefully considered the Motion, Plaintiff's

Response [DE 34] ("Response"), Defendant's Reply [DE 35], and is otherwise fully

advised in the premises.

### I. BACKGROUND

Plaintiff Leslie Reilly ("Plaintiff") filed a purported class action complaint against

Defendant Amy's Kitchen, Inc. ("Defendant") on April 29, 2013.  Complaint [DE 1].  The

Complaint alleges that Defendant misrepresented to its consumers that its products

contain evaporated cane juice ("ECJ") even though ECJ is actually sugar, not juice.

Compl. ¶ 2.  Plaintiff further contends that ECJ is not the common or usual name of any

type of sweetener or juice and that use of this name is "false and misleading."  Id. ¶ 3.

Specifically, Plaintiff alleges that Defendant uses the term ECJ "to make its product

appear healthier than a product that contains 'sugar' as an ingredient and to increase

sales and charge a premium." Id. ¶ 12.  Defendant lists ECJ as an ingredient in its

products despite the fact that the Food and Drug Administration ("FDA") has warned

companies not to use this term because it is false and misleading, violates labeling

requirements, and is not juice. Id. ¶ 15.  In October 2009, the FDA issued draft

guidance which indicated "that the term 'evaporated cane juice' is not the common or

usual name for any type of sweetener, including dried cane syrup" and that the FDA

"considers such representations to be false and misleading." Id. ¶ 17.  Plaintiff

contends that as a result of this guidance, Defendant's products are misbranded in

violation of Fla. Stat. § 500.04. Id. ¶ 21.

 Plaintiff alleges that she has purchased Defendant's products containing ECJ

"including the All-American Veggie Burger, the Margherita Pizza, and the Light & Lean

Black Bean & Cheese Enchilada." Id. ¶ 5.  Plaintiff, on behalf of herself and all similarly

situated Florida consumers who purchased Defendant's products listing ECJ in the

ingredients from April 29, 2009 to the present, brings claims against Defendant for

violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-

501.213 ("FDUTPA") (Counts I and II) and unjust enrichment (Count III).  Defendant

has now moved to dismiss the Complaint.  Plaintiff opposes the Motion.

## II. DISCUSSION

### A. Legal Standard.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)

encompasses both challenges based on the court's lack of federal subject matter

jurisdiction and challenges based on lack of standing.  Stalley v. Orlando Reg'l

Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is

2

jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (internal quotations omitted)); see also Holy Cross Hosp., Inc. v. Baskot, No. 10–62133–CIV, 2010 WL 5418999, at *2 (S.D. Fla. Dec. 23, 2010) ("Standing is jurisdictional in nature; therefore, Defendants proceeded under Rule 12(b)(1) to dismiss Count I for lack of standing."). A claim cannot proceed in federal court if the plaintiff does not have standing. Valley Forge Christian Coll. v. Am. United for Separation of Church & State, 454 U.S. 464, 471 (1982).

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. Accordingly, a well pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 556.

**B. Standing.**

Defendant first argues that Plaintiff lacks standing to bring claims regarding all the products challenged in the Complaint.  Motion at 6.  Specifically, Defendant contends that Plaintiff cannot suffer a loss or been aggrieved by products she did not purchase.  Id.  Because Plaintiff contends she purchased only three of the sixty products she challenges, Defendant argues that Plaintiff lacks standing to challenge the other fifty seven products.  Id.  In opposition, Plaintiff contends that she has standing to bring claims based on products she purchased and "products nearly identical to the claims for the purchased product."  Response at 4 (internal quotation marks omitted).  Alternatively, Plaintiff asserts that whether Plaintiff can bring claims based upon products she did not purchase is an issue of typicality and representation best addressed at the class certification stage.  Id. at 5.

The constitutional standing analysis requires a plaintiff to demonstrate that: (1) the plaintiff suffered an injury in fact; (2) the injury was causally connected to the defendant's action; and (3) the injury will be redressed by a judgment in the plaintiff's favor.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Here, the Complaint only names three of Defendant's products that Plaintiff has purchased.  Compl. ¶ 5.  Yet, Plaintiff seeks to bring claims related to all Defendant's products which contain ECJ.  Id. ¶ 13.  To support her argument that she has standing to bring claims for products she did not purchase, Plaintiff relies on a number of cases, none of which are from this district or the Eleventh Circuit.  See Response at 4-5.  This Court, however, has recently held that a plaintiff only has standing to assert claims related to products that he or she actually purchased.  Toback v. GNC Holdings, Inc., No. 13-80526-CIV,

4

2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013).  As the Court explained, "the law in the Eleventh Circuit is clear that at least one named plaintiff must establish Article III standing for each class subclaim.  Prado–Steiman v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000). In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class certification stage will yield no different result."  Id. at *4.  Thus, the Court agrees with Defendant that Plaintiff only has standing to assert claims based on products she actually purchased.  Accordingly, the Complaint will be dismissed to the extent it brings claims related to products Plaintiff did not purchase.

### C. Whether Plaintiff States a *Per Se* Claim for Relief Under FDUTPA.

Defendant next argues that Plaintiff has failed to state a claim for a *per se* violation of FDUTPA because the Florida Food Safety Act, Fla. Stat. § 500.01-500.80 ("FFSA"), vests discretion as to whether a food product is misbranded solely with government regulators.  Motion at 7.  Defendant also argues that there is no private cause of action under the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399d, as modified by the Nutrition Labeling and Education Act, 21 U.S.C. § 341 ("NLEA").  Id. at 7-10.  Thus, according to Defendant, Plaintiff's FDUTPA claims are preempted.  Id.  Plaintiff rejects these contentions, arguing that her misbranding claim is not premised upon violation of the FDCA or FFSA, but rather upon violation of FDUTPA.  Response at 6-7.

FDUTPA provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  To state a FDUTPA claim,

5

a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (citation omitted). "FDUTPA can be violated in two ways: (1) a *per se* violation premised on the violation of another law proscribing unfair or deceptive practice and (2) adopting an unfair or deceptive practice." Hap v. Toll Jupiter Ltd. P'ship, No. 07-81027-CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 27, 2009). (quoting Fla. Stat. §§ 501.204(1), 501.203(3)). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007)(quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003)). A *per se* violation of FDUTPA results from the violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices." Blair v. Wachovia Mortg. Corp., No. 11-cv-566-Oc-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (citation and internal quotation marks omitted).

Here, the Complaint does not allege that the FDUTPA claims are premised upon violations of the FDCA. Thus, Defendant's arguments that the FDUTPA claim is preempted based on Plaintiff's citation of the FDA's 2009 Guidance are without merit. See Response at 6; see also Moss v. Walgreen Co., 765 F. Supp. 2d 1363, 1366 (S.D. Fla. 2011) (holding that FDCA did not preempt claims arising from plaintiff's contention that defendant's claims about product were not valid); Gitson v. Trader Joe's Co., No. 13-cv-01333-WHO, 2013 WL 5513711, at *8 (N.D. Cal. Oct. 4, 2013) (holding that

6

reference to FDA's 2009 Guidance and warning letters regarding ECJ demonstrated

"plaintiffs' claims [we]re in line with the FDA's current thinking" and thus were not

incompatible with federal food regulations).  Moreover, while the Complaint alleges that

Defendant's practices related to the sale, promotion, and marketing of products

containing ECJ constitute a *per se* violation of FDUTPA in violation of Fla. Stat. §

500.04(1) and (2) because the products are misbranded, Compl. ¶¶ 32, 38, it also

alleges that the practices Defendant employed were "unfair, deceptive, and misleading."

Id.  Thus, regardless of whether Plaintiff can establish a *per se* violation of FDUTPA,

Plaintiff's FDUTPA claims would stand.[1]

### D. Whether the Court Should Invoke the Primary Jurisdiction Doctrine.

Defendant also argues that the primary jurisdiction doctrine requires that this

case be dismissed.  Motion at 9.  Defendant contends that because the issue of

whether ECJ is the proper name for the ingredient at issue, the Court should dismiss

this action and defer to the FDA.  Id. at 9-10.  Plaintiff disputes that this doctrine applies

---

[1]      Fla. Stat. §500.032 provides that "[t]he department is charged with the administration and enforcement of this chapter in order to prevent fraud, harm, adulteration, misbranding, or false advertising in the preparation, manufacture, or sale of articles of food. It is further charged to enforce the provisions of this chapter relating to the production, manufacture, transportation, and sale of food, as well as articles entering into, and intended for use as ingredients in the preparation of, food."  Fla. Stat. § 500.032(1).  Thus, Defendant's argument that Plaintiff could not bring a private cause of action under Fla. Stat. § 500.04 is well-taken.  However, it is not apparent that a plaintiff must be able to maintain a private cause of action under Fla. Stat. § 500.04 to establish a *per se* violation under FDUTPA.  As Defendant acknowledges, no case law exists which specifically addresses this issue.  See Motion at 8.  To the extent Defendant argues that the FFSA does not apply to its business because it was not involved in intrastate commerce in food, the Court finds that this is a factual issue not appropriate for resolution on a motion to dismiss.  See Motion at 9.

to this case because "the Court is not presented with a complicated issue of first impression that requires the expertise and involvement or the FDA to decide." Response at 14.

The Eleventh Circuit has explained that:

> The primary jurisdiction doctrine is ... concerned with protecting the administrative process from judicial interference." Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir. 2000). Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." Reiter v. Cooper, 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). "'[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.'" Boyes, 199 F.3d at 1265 (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1310 (2nd Cir.1990)); see also United States v. Western Pac. R.R. Co., 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

Sierra Club v. Van Antwerp, 362 F. A'ppx 100, 104 (11th Cir. 2010).  Here, Defendant argues that the Court should defer to the FDA because the FDA's expertise is needed to determine the proper identification of ECJ.  Motion at 11.  While some courts have invoked the primary jurisdiction doctrine on claims regarding ECJ, see, e.g., Hood v. Wholesoy & Co., No. 12-cv-550-YGR, 2013 WL 3553979, at *6 (N.D. Cal. July 12, 2013), this Court does not believe that Defendant has established the primary jurisdiction doctrine's applicability.  As a court within the Northern District of California recently concluded there is "no reason why determining whether a label is misleading is outside the ability of the Court.  Such questions are frequently determined by courts." Morgan v. Wallaby Yogurt Co., No. 13-cv-00296-WHO, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013).  Moreover, the FDA's draft guidance and issuance of warning letters

regarding ECJ demonstrates that this is not an issue of first impression.  Id.

Accordingly, the Court will not dismiss this case based upon the primary jurisdiction

doctrine.  See Morgan, 2013 WL 5514563, at *4 (declining to apply primary jurisdiction

doctrine to claims regarding ECJ); Gitson, 2013 WL 5513711, at *9 (same);

Werdebaugh v. Blue Diamond Growers, No. 12-cv-02724-LHK, 2013 WL 5487236, at

*11-12 (N.D. Cal. Oct. 2, 2013) (same); Samet v. Procter & Gamble Co., No. 5:12-cv-

01891, 2013 WL 3124647, at *8 (N.D. Cal. June 18, 2013) (same).

## E. Whether Plaintiff States FDUTPA Claims.

### 1. Whether Plaintiff has Plead Any Facts Supporting that ECJ is Misleading.

Defendant next argues that Plaintiff's FDUTPA  claims fail because Plaintiff has

failed to plead any facts indicating that the identification of the ingredient as ECJ rather

than sugar was misleading.  Motion at 13.  Defendant also argues that because the

product labels disclosed the total sugars, a reasonable consumer would be aware that

there were sweeteners in the products.  Id. at 13-14.  In opposition, Plaintiff contends

that whether consumers were mislead by the use of the term ECJ rather than sugar is a

factual issue which may not be resolved on a motion to dismiss.  Response at 10.

The Court agrees with Plaintiff.  The Complaint alleges that Defendant's use of

the term ECJ was false and misleading, Compl. ¶ 2, and that Defendant used this term

rather than sugar to make its products appear healthier than they are.  Id. ¶ 12.  The

Complaint further alleges that because Defendant's products appeared healthier, it was

able to increase sales and charge a premium price.  Id.  Whether reasonable

consumers were actually deceived by the use of the term ECJ is a factual issue which

the Court will not resolve on a motion to dismiss.  Additionally, whether the disclosure of

the total sugars in the product should have alerted reasonable consumers that the

product contained sweeteners is also a factual issue.  Thus, the Court declines to grant

the Motion on this basis.

2. Whether Plaintiff has Plead Any Facts Regarding Damages.

Defendant also contends that Plaintiff fails to plead any facts from which

damages could be calculated.  Motion at 15.  According to Defendant, Plaintiff's

allegations regarding monetary losses and price inflation are too speculative to

constitute an injury in fact.  Id. (citing Prohias v. Pfizer, Inc., 485 F. Supp. 2d 1329,

1336-37 (S.D. Fla. 2007)). In opposition, Plaintiff points to three more recent opinions

from this Court where the Court found that payment of a premium price stated a claim

under FDUTPA.  Response at 12.

As this Court has explained:

> "As a general rule, the measure of actual damages under [FDUTPA] is the
> difference in the market value of the product or service in the condition in which it
> was delivered and its market value in the condition in which it should have been
> delivered." 10A Fla. Jur.2d Consumer and Borrower Protection § 172 (2009);
> accord Rollins, 951 So.2d at 869; Eclipse Med. v. Am. Hydro-Surgical
> Instruments, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999). "Florida courts have
> allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA
> claim." Collins v. DaimlerChrysler Corp., 894 So.2d 988, 990 (Fla. 5th DCA
> 2004). In addition, "actual out of pocket losses" are not a prerequisite to a
> deceptive trade practices action in Florida. Id. at 990. However, "FDUTPA does
> not provide for the recovery of nominal damages, speculative losses, or
> compensation for subjective feelings of disappointment." Rollins, 951 So.2d at
> 873.

Smith v. Wm. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009).  In Smith,

the Court held that where a defendant's misleading claims allowed it to charge a price

premium for its product, the plaintiff had stated a claim for damages under FDUTPA.

Id. at 1339-40.   In reaching this conclusion, the Court distinguished Prohias v. Pfizer,

10

Inc., noting that in that case, the Court was swayed by the fact that the plaintiffs continued to pay for the drug in question despite their knowledge of the misleading statements about the drug's coronary benefits.  Id. at 1340.  The Court also found that any damages stemming from price inflation were not speculative where the complaint alleged that due to the misleading statements, the defendant was able to charge a price premium for their product when compared to similar products on the market.  Id.  Here, the Complaint alleges that Defendant misled consumers by failing to disclose that ECJ was actually sugar and, as a result, charged consumers a premium price for its products.  Compl. ¶¶ 20, 22-23.  Based on these allegations, the Court declines to find that Plaintiff has failed to plead any facts regarding damages.  See Moss, 765 F. Supp. 2d at 1368; Pelkey v. McNeil Consumer Healthcare, No. 10–61853–CIV, 2011 WL 677424, at *6 (S.D. Fla. Feb. 16, 2011); Smith, 663 F. Supp. 2d at 1340; Bezdek v. Vibram USA Inc., No. 1:12-cv-10513-DPW, 2013 WL 639145, at *7-8 (D. Mass. Feb. 20, 2013) (finding that price premium injury is a cognizable injury under both Massachusetts and Florida consumer protection laws).[2]

   3. Whether A Reasonable Consumer Would Find the Term ECJ Misleading.

   Defendant also argues that the Court should dismiss Plaintiff's claims because no reasonable consumer would be misled into believing its products contained juice or did not contain sugar cane-based sweeteners.  Motion at 16.  Defendant also contends

---

   [2]   The Court is not persuaded by Defendant's attempts to distinguish Moss and Smith.  See Motion at 15.  Plaintiff has alleged that Defendant was able to charge a premium price for its products based on its use of the term ECJ.  Whether Plaintiff is able to substantiate her allegations that Defendant was able to charge a premium price is a factual issue more appropriate for resolution on a motion for summary judgment.

that a reasonable consumer would understand that ECJ is a sugar cane-based

sweetener.  Motion at 18.  Plaintiff has alleged that Defendant's use of the term ECJ

was misleading.  Whether reasonable consumers were actually misled or understood

that ECJ was a sugar cane based sweetener are factual issues, inappropriate for

resolution on a motion to dismiss.  Accordingly, the Court declines to dismiss the

Complaint on these grounds.

### 4. Whether ECJ is the Ingredient's Common or Usual Name.

Defendant next contends that calling the ingredient ECJ is literally true and, thus,

not deceptive.  Motion at 16.  Along these same lines, Defendant argues that ECJ is the

product's usual or common name, thus complying with state law.  Id. at 19.  Plaintiff

rejects both arguments because the 2009 Draft Guidance states that calling sugar cane

syrup juice is false and misleading and the mere trademarking of the name ECJ does

not establish that it is the common or usual name of sugar.  Response at 18-19.

Defendant's contention that ECJ is the ingredient's common or usual name is

belied by Plaintiff's factual allegations regarding the 2009 Draft Guidance and the

FDA's warning letters regarding same.  Compl. ¶¶15-19.  Moreover, the mere fact that

the term ECJ was trademarked also fails to establish that Defendant's use of this name

was not false and misleading.  Accordingly, the Court finds that neither of these

arguments are grounds to dismiss the Complaint.

### F. Whether Plaintiff May State an Unjust Enrichment Claim.

Finally, Defendant argues that Plaintiff's unjust enrichment claim fails because it

is based on the same conduct as her FDUTPA claim.  Motion at 20.  In opposition,

Plaintiff contends that she may state both an unjust enrichment claim and a FDUTPA

claim under Eleventh Circuit precedent.  Response at 17-18.  The Court agrees with Plaintiff that Eleventh Circuit precedent dictates that her unjust enrichment claim move forward.

Unjust enrichment is an equitable doctrine.  "Liability in unjust enrichment has in principle nothing to do with fault.  It has to do with wealth being in one person's hands when it should be in another person's."  Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd., 329 F.3d 1241, 1245 n.3 (11th Cir. 2003).  The doctrine applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.  See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005).  In State Farm Mutual Automobile Insurance Co. v. Physicians Injury Care Center, Inc., the Eleventh Circuit held: "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. 5th DCA 1998). However, that rule does not apply to unjust enrichment claims. Id.  'It is only upon a showing that an express contract exists [between the parties] that the unjust enrichment ... count fails.' Id."  427 F. App'x 714, 722 (11th Cir. 2011).  Because the Eleventh Circuit has rejected the very argument Defendant makes in support of dismissal of the unjust enrichment claim, and there is no allegation that an express contract exists between the parties, the Court will deny the Motion as to the unjust

13

enrichment claim.[3]  See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig., No. 12-md-02324, 2013 WL 3830124, at *15 (S.D. Fla. July 24, 2013) (noting that "to the extent that a plaintiff has adequate legal remedies under theories of liability other than a claim of breach of an express contract, those remedies do not bar an unjust enrichment claim.").

## III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Amy Kitchen Inc.'s Motion to Dismiss [DE 17] is **GRANTED IN PART AND DENIED IN PART**;

2. The Motion is **GRANTED** solely as to Plaintiff's claims relating to products Plaintiff did not purchase;

3. Defendant Amy's Kitchen, Inc.'s Motion to Take Judicial Notice [DE 18] is **DENIED** as **MOOT**;

4. Defendant Amy's Kitchen, Inc.'s Request for Judicial Notice of in Support of its Motion to Dismiss [DE 48] is **DENIED** as **MOOT**; and

5. Defendant shall file its answer to the Complaint [DE 1] on or before **December 23, 2013.**

---

[3]     The Court recognizes that this holding conflicts with that of the Court in Guerrero v. Target Corp., 889 F. Supp. 2d 1348 (S.D. Fla. 2012).  The Court does not recall either party in that case bringing the State Farm Mutual Automobile Insurance Co. case to the Court's attention.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 9th day of December, 2013.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.