UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:13-cv-21525-JIC

LESLIE REILLY, an individual,
on behalf of herself and all others similarly
situated,

    Plaintiff,

v.

AMY'S KITCHEN, INC.,
a California corporation,

    Defendant.
_____/

**DEFENDANT AMY'S KITCHEN, INC.'S MOTION TO DISMISS UNDER
RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.   INTRODUCTION**

    To have subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). The amount in controversy here is not even close and, therefore, the Court must dismiss this case.

    Plaintiff Leslie Reilly ("Plaintiff") filed this putative class action on April 29, 2013, challenging Defendant Amy's Kitchen, Inc.'s ("Defendant" or "Amy's") identification of the ingredient "evaporated cane juice" on its product labels. Complaint [DE 1] at ¶¶ 1-2. In her complaint, Plaintiff, for herself and on behalf of a class of Florida consumers, identified sixty products sold by Amy's, but alleged that she purchased only three: the All American Veggie Burger, the Margherita Pizza, and the Light & Lean Black Bean & Cheese Enchilada (collectively, the "Purchased Products"). *Id.* at ¶¶ 5, 24. During her deposition, Plaintiff confirmed the complaint's allegations regarding the three Amy's products that she purchased.

Declaration of Michael L. Resch, filed concurrently herewith ("Resch Decl."), Ex. 1 at 37:1-2, 37:25-38:3 (Plaintiff testifying that she purchased the veggie burger "about 15, 20 times"), *id*. at 34:9-20, 35:17-24 (Plaintiff testifying that she purchased the personal size margherita pizza approximately "Fifteen, 20" times), *id*. at 36:5-13, 37:19-24 (Plaintiff testifying that she purchased "24, 25" of the enchiladas).

On July 16, 2013, Amy's moved to dismiss the complaint, arguing, among other things, that Plaintiff lacks standing to challenge the fifty-seven products she did not purchase (collectively, the "Non-Purchased Products"). DE 17 at 6. On December 9, 2013, the Court issued its Order on Amy's motion to dismiss, "agree[ing] with Defendant that Plaintiff only has standing to assert claims based on products she actually purchased" and dismissing the claims "related to products Plaintiff did not purchase." DE 60 at 5.

Amy's sales in Florida of the three Purchased Products during the relevant class period are $1,045,993. *See* Declaration of Andrew J. Kopral, filed concurrently herewith ("Kopral Decl."), at ¶ 15. This amount is a far cry from the $5,000,000 threshold that CAFA requires for federal court jurisdiction over this action. 28 U.S.C. § 1332(d)(2); *see* Complaint at ¶ 8.

Hoping to avoid burdening the Court with this motion, counsel for Amy's met and conferred with Plaintiff's counsel on December 16, 2013. Resch Decl. at ¶ 3. Having already received a summary of Amy's sales in Florida in discovery in this action, Plaintiff's counsel did not contest that the amount related to the three Purchased Products was substantially less than the jurisdictional amount. *Id*. Rather, Plaintiff argued that she may count the sales for all sixty products because that is what she sued for at the outset of the case and jurisdiction is measured at the time the complaint was filed on April 29, 2013. *Id*. Plaintiff, however, may not bootstrap jurisdiction on the back of claims that – as unambiguously determined by this Court – she had no

2

standing to assert in the first place.  Otherwise, plaintiffs could allege meritless claims (which are later dismissed), gain admission to federal court, and forever bind a court's jurisdiction.  Not surprisingly, the law rejects such a theory that would have plaintiffs control a federal court's subject matter jurisdiction.

To be sure, courts analyze whether subject matter jurisdiction exists by determining the amount in controversy at the time suit was filed.  *See, e.g., Zehel-Miller v. AstraZenaca Pharms., LP*, 223 F.R.D. 659, 665-666 (M.D. Fla. 2004).  It is also true that "subsequent events" that affirmatively reduce the amount in controversy below the statutory minimum do not necessarily oust the court's jurisdiction.  *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182-83 (6th Cir. 1993).  However, it is just as well established that a "distinction must be made … between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was [never] in controversy at the commencement of the action."  *Mario v. Centex Homes*, 2006 WL 560150, at *1 (M.D. Fla. Mar. 7, 2006) (citations omitted); *see also, e.g., Cuneo Law Group, P.C. v. Joseph*, 920 F. Supp. 2d 145, 151 (D.D.C. 2013); *State Farm Mut. Auto Ins. Co. v. Powell*, 87 F.3d 93, 97 (3d Cir. 1996); *Jones*, 2 F.3d at 183.

Applying these principles here is straightforward.  Plaintiff never had standing to sue on the fifty-seven Non-Purchased Products, and thus the Court's December 9, 2013 Order on the motion to dismiss merely revealed that the required jurisdictional amount was never at issue.  In other words, nothing changed between the filing of the complaint on April 29, 2013 and the Order on December 9 – the Court simply had an opportunity to review and rule on Amy's motion to dismiss.

Because the amount in controversy does not satisfy – and has never satisfied – the jurisdictional minimum, this action is not within the subject matter jurisdiction of this Court

under 28 U.S.C. § 1332(d)(2) and should be dismissed.

## II.    FACTUAL BACKGROUND & PROCEDURAL POSTURE

### A.    The Complaint's Allegations

**The alleged claims.**  The complaint asserts claims for unjust enrichment and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213, based on Amy's identification of the ingredient "evaporated cane juice" ("ECJ") in the ingredient list on its product labels.  Complaint at ¶¶ 2-3.  Plaintiff alleges that as a result of its practices, Amy's "has collected millions of dollars from the sale of its products with ECJ that it would not have otherwise earned."  *Id*. at ¶ 4.  Later in the complaint, Plaintiff alleges that she paid a "premium price" for Amy's products with ECJ, and that she would have paid less if ECJ had not been listed as one of the ingredients.[1]  *Id*. at ¶¶ 20-23.

In denying Amy's motion to dismiss on the issue of damages, the Court concluded that Plaintiff in fact had alleged a premium price theory of recovery, *i.e.*, the *mark-up* in the price of Amy's product (if any) due to Amy's use of the ingredient name "evaporated cane juice" over the price that would have been charged but-for the use of that ingredient name.[2]  Order at 10-11.  As set forth below, however, even if *all* of Amy's sales to its distributor and retail customers in Florida are considered – which would be an amount *far* in excess of any possible alleged "mark-up" or "premium" – the amount still falls far short of the jurisdictional minimum.  As such, to grant this motion, there is no need for the Court to consider, let alone determine, what Plaintiff could reasonably recover under a premium price theory or under a percentage of profits earned

---

[1]     Plaintiff does not specify the amount of the premium that she allegedly paid.
[2]     Plaintiff's allegations about what Amy's should have called the ECJ ingredient are inconsistent.  On the one hand, Plaintiff alleges the ingredient should have been called "sugar" (*id*. at ¶ 10), but the non-binding, draft FDA guidance quoted extensively in the complaint suggests the common or usual name is "dried cane syrup" (*id*. at ¶ 17).

4

by Amy's theory.

**The alleged geographic scope: Florida.** Plaintiff seeks to represent a class of individuals who "purchased in Florida" Amy's products listing ECJ as an ingredient. Complaint at ¶ 1; *see also id.* at ¶ 5 (alleging Plaintiff is a citizen of Florida and purchased Amy's ECJ products in Florida); *id.* at ¶ 24 (seeking certification of class of individuals who purchased Amy's ECJ products in Florida).

**The alleged time period: April 29, 2009-April 29, 2013.** Plaintiff defines the alleged class period as "from April 29, 2009 up to and including the present…." *Id.* at ¶ 1; *see also id.* at ¶ 24 (same). For the purposes of this motion, therefore, the relevant time period is from April 29, 2009 (*i.e.*, the beginning of the class period) to April 29, 2013 (*i.e.*, the date the complaint was filed).[3]

**The alleged products and purchases.** Plaintiff alleged claims based on "any of Amy's Kitchen's products listing ECJ in the ingredients." *Id.* at ¶ 1. The complaint even includes a list of sixty products with ECJ that are sold by Amy's. *Id.* at ¶ 13; *see also id.* at ¶¶ 22, 24. However, Plaintiff alleges that she purchased only three of Amy's products: the "All-American Veggie Burger, the Margherita Pizza, and the Light & Lean Black Bean & Cheese Enchilada." *Id.* at ¶ 5. Plaintiff confirmed the products that she purchased during her deposition. Resch Decl., Ex. 1 at 34:9-38:3.

**The alleged basis for jurisdiction: CAFA.** Plaintiff alleges that the Court has subject matter jurisdiction over this action based on CAFA. Complaint at ¶ 8 (alleging "the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs" and citing 28

---

[3] *See Zehel-Miller*, 223 F.R.D. at 665-66 (jurisdiction analyzed at the time suit is filed). The end date of the alleged sales is not particularly relevant here, however, because the sales are so much lower than the jurisdictional minimum that it would not matter if the sales were calculated through today. Kopral Decl. at ¶ 16.

U.S.C. § 1332(d)). This allegation, however, necessarily relied on the sale of all sixty listed products, including the fifty-seven products on which Plaintiff had no standing to sue. Because on a Rule 12(b)(1) motion the Court may and should look beyond the face of the Complaint to determine its jurisdiction (*see infra* at 11), the Court is not bound by Plaintiff's jurisdictional allegation, which relies on claims the Court has already held to be legally unsustainable.

> **B.    This Court Ruled That Plaintiff Only Has Standing to Assert Claims Based On Products She Purchased**

On July 16, 2013, Amy's filed its motion to dismiss the complaint. DE 17. In the motion, Amy's argued that Plaintiff lacked Article III standing to bring a claim as to the fifty-seven products she did not purchase. DE 17 at 6 ("Plaintiff cannot have suffered a loss or been aggrieved by products she did not purchase"); *id*. (Plaintiff is required to have purchased "every product that she seeks to challenge"). On December 9, 2013, the Court issued its Order granting that part of Amy's motion:

> This Court, however, has recently held that a plaintiff only has standing to assert claims related to products that he or she actually purchased. *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013). As the Court explained, "the law in the Eleventh Circuit is clear that at least one named plaintiff must establish Article III standing for each class subclaim. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000). In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class certification stage will yield no different result." *Id*. at

6

> *4. ***Thus, the Court agrees with Defendant that Plaintiff only has standing to assert claims based on products she actually purchased. Accordingly, the Complaint will be dismissed to the extent it brings claims related to products Plaintiff did not purchase.***

Order [DE 60] at 4-5 (emphasis added).

In making its ruling, the Court did *not* conclude that Plaintiff previously had standing to assert claims related to the Non-Purchased Products and somehow lost standing to allege such claims. Rather, it is clear from the Order that Plaintiff *always* lacked standing on the fifty-seven Non-Purchased Products. That fact – *i.e.*, Plaintiff's failure to purchase the fifty-seven products – has always existed, including at the time the complaint was filed.

### C.      Amy's Sold Only $1,000,000 Of The Three Purchased Products in Florida From April 29, 2009 (The Beginning Of The Class Period) Through April 29, 2013 (The Day The Complaint Was Filed)

Amy's sells its products to "distributors," which then re-sell to retailers that, in turn, sell to end-user consumers. Kopral Decl. ¶ 6. Amy's also sells directly to "retailers" that, in turn, sell to end-user consumers. *Id*. Amy's sets the price at which it sells its products to its distributor and retailer customers. *Id*. at ¶ 8. Under certain circumstances, and from time-to-time, Amy's offers discounts and allowances from its announced prices. *Id*. Discounts and allowances are deducted from gross revenue to arrive at net revenue, *i.e.*, the revenue actually realized by Amy's for the sale of its products to its customers. *Id*. Through its financial accounting system, Oracle Enterprise Resource Planning, Amy's is able to generate reports of gross revenue, discounts and allowances, and net revenue, by product, by date and by geographic

region. *Id.*[4]

Based on a report recently generated by Amy's utilizing its Oracle financial accounting system and taking into account all relevant information and data, the total net revenue to Amy's in U.S. dollars for sales into the State of Florida during the period from the date of filing of this action (April 29, 2013) and going back four years (April 29, 2009) for the All American Veggie Burger product (product no. 15) was $293,464, for the Light & Lean Black Bean & Cheese Enchilada product (product no. 63) was $598,825, and for the Margherita Pizza product (product no. 187) was $153,704. *Id.*, ¶ 12. Thus, the total net revenue to Amy's in U.S. dollars for sales of all three products into the State of Florida during the four-year period from April 29, 2009 to April 29, 2013 was $1,045,993. *Id.*, ¶ 13.[5] This amount is obviously far more than Amy's *profits* and far more than any possible "mark-up" or "price premium" alleged in the complaint, *i.e.*, far more than plaintiff is seeking.

### D.     The Meet and Confer Over this Motion

After receiving the Court's December 9 Order, counsel for Amy's contacted Plaintiff's counsel to schedule a meet and confer concerning the issues raised in this motion. The parties participated in a meet and confer call on December 16, 2013, during which Amy's counsel summarized the nature and basis of the motion. Resch Decl. at ¶ 3. In response, Plaintiff's

---

[4]     Amy's *customers* set the price at which *they* re-sell the product. Amy's Kitchen neither sets the resale prices nor has specific knowledge of the particular retail prices charged by its customers. Kopral Decl. ¶ 9. Nor does Amy's have data reflecting the amount of sales by state of its distributor and retailer customers. *Id.* at ¶ 7.

[5]     Even if Amy's Kitchen were to add in the total net revenue for the last eight months (*i.e.*, from the date the action was filed up through December 15, 2013), the total would be millions of dollars less than the "in excess of $5 million" jurisdictional threshold. Kopral Decl., ¶ 17. Likewise, even if Amy's were to include a reasonable retail mark-up on the net revenue reflected above, the total would be millions of dollars less than the "in excess of $5 million" jurisdictional threshold. *Id.,* ¶ 16. Retail mark-up would have to be more than 475% to reach the $5,000,000 threshold. *Id.*, ¶ 17.

counsel argued that jurisdiction is measured at the time the complaint is filed (*i.e.*, prior to dismissal of the fifty-seven Non-Purchased Products) and relied on the general principle that once jurisdiction exists, it always exists. *Id*. For the reasons more fully set forth herein, Amy's counsel disagreed that such a principle applied where, as here, a court concludes on a motion to dismiss that plaintiff lacked standing to assert certain claims in the first place. *Id*. Because Plaintiff lacked standing at the time the complaint was filed, there has never been jurisdiction. *Id*.

Amy's counsel offered to review any case law Plaintiff believed supported her position, but as of the filing of this motion, Plaintiff did not send any. *Id*. The parties agreed that they had satisfied the meet and confer requirement, and Plaintiff's counsel confirmed that Plaintiff would oppose the motion. *Id*.

### III.   SUBJECT MATTER JURISDICTION OVER THIS ACTION DOES NOT EXIST

Because subject matter jurisdiction over this case does not exist, the Court should grant this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). As the law in the Eleventh Circuit and Federal Rule of Civil Procedure 12(h)(3) confirm, if at any point in the proceeding the Court determines that it lacks subject matter jurisdiction, it must dismiss the action. *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1323-24 (S.D. Fla. 2011); *Emx Int'l, LLC v. G2 Assocs., LLC*, WL 6721004, at *2 (M.D. Fla. Dec. 6, 2012), *recommendation aff'd*, 2012 WL 6721001 (M.D. Fla. Dec. 27, 2012).

In considering a motion to dismiss for lack of subject matter jurisdiction, a court must determine, to a legal certainty, whether the plaintiffs' claims meet the requisite jurisdictional amount. *Zehel-Miller*, 223 F.R.D. at 665-66. Normally, a defendant challenging subject matter jurisdiction at the outset of an action would bear the burden of demonstrating to a legal certainty

9

that the allegations in the complaint do not meet the jurisdictional "amount in controversy" requirement. Here, however, Plaintiff's allegations supporting the requisite jurisdictional amount are dependent on claims relating to fifty-seven products (the Non-Purchased Products) that already have been dismissed from the action. Accordingly, it is a legal certainty that the Non-Purchased Products may not be used to satisfy the jurisdictional minimum. And, as detailed below, the remaining three products are insufficient on their own – again, to a legal certainty – to support CAFA jurisdiction in this action.

When a defendant "properly challenges subject matter jurisdiction under Rule 12(b)(1)," the court "is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008). And, of course, the Court may look outside the four corners of the complaint to determine whether it has jurisdiction to hear the case. *Southeast Bank, N.A. v. Gold Coast Graphics Group Partners*, 149 F.R.D. 681, 683-84 (S.D. Fla. 1993); *Bierer-Carter v. United States*, 806 F. Supp. 2d 1245, 1248 (S.D. Fla. 2011).

Plaintiff may not invoke jurisdiction here, because her claims on the Purchased Products – *i.e.*, the only claims for which she has standing – are worth substantially less than the $5,000,000 jurisdictional minimum.

      A.    **The Amount In Controversy On The Three Purchased Products Is Well Beneath The Jurisdictional Minimum**

           1.    **The Jurisdictional Requirements Under CAFA**

Pursuant to CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). The Eleventh Circuit has enforced this "matter in controversy" amount requirement. *See Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir.

2006); *Thomas v. Bank of Am. Corp.*, 570 F.3d 1280 (11th Cir. 2009).  Thus, to establish jurisdiction here, Plaintiff must show that the amount in controversy exceeds $5,000,000.  She cannot do so.

### 2. The Claims Over The Three Purchased Products Do Not Exceed $5,000,000

As described above and in more detail in the declaration of Andrew J. Kopral, Amy's total net revenue from sales of the Purchased Products in the State of Florida during the period from the date of filing of this action (April 29, 2013) and going back four years (April 29, 2009) was $1,045,993.[6]  Given these facts, it is impossible for Plaintiff to meet the required $5,000,000 amount in controversy.

### B. Plaintiff May Not Rely On Her Claims Over The Fifty-Seven Non-Purchased Products To Establish Jurisdiction

Recognizing that her claims over the Purchased Products do not satisfy the jurisdictional minimum, Plaintiff likely will argue in opposing this motion that she may rely on the fifty-seven Non-Purchased Products.  In doing so, Plaintiff relies on the theory that the amount in controversy is locked in at the time the complaint was filed, including amounts associated with claims Plaintiff had no standing to assert.  Courts repeatedly have rejected such arguments

---

[6] This amount reflects the total net revenue from the sales of the Purchased Products.  But Plaintiff could never recover this entire amount.  Under a best case scenario for Plaintiff, she could recover at most Amy's profits or the alleged premium paid for Amy's products attributable to Amy's listing evaporated cane juice as an ingredient.  Both measures of damages (if any) would be a small percentage of the net revenue figures set forth in Mr. Kopral's declaration.  For example, any alleged premium is necessarily quite low (if not non-existent) due to the many other factors that consumers consider material in purchasing these products.  Plaintiff herself testified that she relied on the organic labeling in purchasing Amy's products (Resch Decl. Ex. 1 at 16:5-10, 42:8, 47:6), that she would pay more for products, like Amy's, that do not have genetically modified organisms (*id*. at 50:6-20), and that she would pay more for a product without trans fat, MSG, preservatives, or rBST (*id.* at 52:4-53:14).  Each of those factors material to Plaintiff's purchasing decisions – and for which Amy's is able to sell their products at a profit – are entirely unrelated to Amy's use of the ingredient name evaporated cane juice.

seeking to invoke jurisdiction of the federal courts.

### 1. The Law Distinguishes Between "Subsequent Revelations" Regarding The Amount In Controversy And "Subsequent Events" That Change The Amount In Controversy

In determining jurisdiction under both CAFA and 28 U.S.C. § 1332(b), courts distinguish between a "mere revelation" exposing that the amount in controversy was never met to begin with, and "subsequent events" that decrease the amount in controversy after the complaint has been filed. *See, e.g., Mario*, 2006 WL 560150 (M.D. Fla. Mar. 7, 2006); *see also Coventry Sewage Assocs. v. Dworkin Realty Co.,* 71 F.3d 1, 4 (1st Cir. 1995); *Jones*, 2 F.3d at 183; *Holland v. Lowe's Home Ctrs., Inc.*, 198 F.3d 245 (table), 1999 WL 993959 at *2 (6th Cir. 1999); *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 823 (8th Cir. 2011); *Capital Law v. Viar*, 338 F. Supp. 2d 891, 895 (W.D. Tenn. 2004); *Heichman v. Am. Tel. & Tel. Co.*, 943 F. Supp. 1212, 1217 (C.D. Cal. 1995).

As these cases confirm, subsequent *revelations* that the amount in controversy was never met renders the continued exercise of jurisdiction untenable and requires the court to dismiss the action. *Id*. Conversely, subsequent *events* that alter the amount at stake do not divest the court of its jurisdiction, and the court may proceed to hear the case regardless of whether the amount recoverable by a plaintiff exceeds the jurisdictional amount. *Jones*, 2 F.3d at 182-183.

Such a distinction makes perfect sense. A court's jurisdiction should not fluctuate as facts relating to diversity or the amount in controversy *change* with market conditions or the actions of the parties after the case is filed. In contrast, plaintiffs should not be able to invoke and bind the court's jurisdiction by asserting claims or damages that are revealed later not to have ever been legally cognizable. This distinction recognizes the procedural reality that a defendant cannot challenge a complaint at the same time it is filed, so there is necessarily a delay

12

between the filing of the complaint and the court having an opportunity to rule on a legal challenge to the asserted claims. Plaintiffs cannot seize on this delay to lock in jurisdiction where it was lacking to begin with – especially where, as here, the deficiency in the asserted claims is as fundamental as the plaintiff's lack of standing.

Numerous courts in far less compelling circumstances have dismissed cases for lack of jurisdiction under the subsequent revelation rule. In *Mario v. Centex Homes*, for example, the district court applied the revelation vs. subsequent event test to determine whether the amount in controversy requirement had been met. In *Mario*, the plaintiff sued for breach of contract and unjust enrichment. 2006 WL 560150 (M.D. Fla. Mar. 7, 2006) at *1. The breach of contract claim sought only $22,464.00, and thus the unjust enrichment claim was necessary to reach the jurisdictional minimum. *Id*.

In response to defendant's motion to dismiss, the court concluded that the existence of a contract legally precluded a claim for unjust enrichment. *Id*. Because the remaining damages claim was insufficient to satisfy the jurisdictional amount, the court assessed whether it lacked subject matter jurisdiction. *Id*. Relying on well-established legal principles recognized in Third and Sixth Circuit decisions, the Florida district court identified the distinction between subsequent revelations and subsequent events:

> [A] "distinction must be made … between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was [never] in controversy at the commencement of the action.

*Id*. The court explained that due to the existence of a contract, which precludes an unjust enrichment claim as a matter of law, the plaintiff's claim "was fatally deficient" when it was

filed. *Id*. As such, the court determined that it lacked subject matter jurisdiction over the action. *Id*. at *2.

Cases from other circuits, including the cases relied upon in *Mario*, are instructive as well. In *Jones*, for example, the plaintiffs brought suit to recover royalties owed to them by the defendant under an assignment. *Jones*, 2 F.3d at 181-83. The plaintiffs alleged that the controversy exceeded $50,000; however the defendants in their answer stated that the true amount was actually less than $10,000. *Id*.

To determine whether the amount in controversy requirement was met, the Sixth Circuit highlighted the distinction between subsequent events and subsequent revelations. *Id*. at 183. When it applied this rule to the facts, the court found that the plaintiffs subsequently revealed that their claim was worth less than the jurisdictional requirement. *Id*. "Since no subsequent event occurred to reduce the amount in controversy, this can only mean that the plaintiffs' claims never satisfied the jurisdictional requirement." *Id*. The "[l]ack of the jurisdictional amount from the outset – although not recognized until later – is not a subsequent change that can be ignored." *Jones*, 2 F.3d at 183, quoting Moore's Federal Practice ¶ 0.92 (2d ed. 1993). The *Jones* court thus reached the inevitable conclusion that there was "never more than $50,000 in controversy," and remanded the case to the district court with instructions to dismiss. *Id*.

In *State Farm Mut. Auto. Ins. Co. v. Powell*, the Third Circuit came to a similar conclusion. There, the initial complaint alleged that three insurance policies were at issue in an accident case, each worth $50,000, and totaling $150,000 at issue, an amount exceeding the jurisdictional requirement. *State Farm Mut. Auto. Ins. Co.*, 87 F.3d at 95. The parties later discovered that one of the policies was not in effect at the time of the accident. *Id*. Moreover, a second policy had been settled. *Id*. at 96-97. Thus, all that remained in controversy was a single

14

policy worth $50,000 – a penny less than the jurisdictional requirement. *Id*.

State Farm argued that the amount in controversy requirement was satisfied because at the time that it filed its complaint, it believed $150,000 was at issue, and subsequent events could not destroy jurisdiction if it existed at the time of filing. *Id*. at 97. In analyzing the issue, the court drew upon the revelations vs. subsequent events distinction. *Id*. The court explained that one of the three policies had been purchased after the underlying car accident had occurred, and thus only the other two policies could be used to satisfy the jurisdictional requirement. *Id*. The parties, however, had already settled their dispute under one of those policies at the time the complaint was filed, leaving only a single $50,000 in controversy at that time. *Id*. The Third Circuit regarded these facts as subsequent *revelations*, not subsequent *events*, and concluded that the amount in controversy was limited to $50,000 rather than the $150,000 in the complaint. *Id*. Accordingly, the court remanded the case to the district court to dismiss the case for lack of jurisdiction. *Id*. at 99.

Similarly, in *Cuneo Law Group, P.C. v. Joseph*, the court relied on a subsequent revelation – *i.e.*, one of the asserted claims was barred by res judicata – in determining that the amount in controversy requirement was *not* satisfied. There, the defendant was employed as a staff attorney and then an independent contractor by the plaintiff law firm. *Cuneo Law Group*, 920 F.Supp.2d at 146. The parties entered into a settlement agreement to resolve litigation regarding the staff attorney's employment. *Id*. at 146-147. The law firm later filed a declaratory judgment action, alleging that the staff attorney had breached the agreement and was not entitled to the compensation provided by it. *Id*. at 147. The court determined that it had already litigated the issue of whether the attorney was entitled to compensation under the agreement. *Id*. at 150. The court reasoned that the amount in controversy was thus entirely predicated on an issue

15

barred, as a matter of law, by claim preclusion. *Id*. Because res judicata was a subsequent revelation rather than a subsequent event, the court found that the amount was never in controversy at the commencement of the action and dismissed the action. *Id*. at 151.

Under these principles, Plaintiff's lack of standing to sue on fifty-seven Non-Purchased Products is clearly a subsequent revelation requiring dismissal, not a subsequent event having no impact on jurisdiction.

### 2. Plaintiff Never Had Standing To Sue On The Non-Purchased Claims, And Thus The Court's December 9, 2013 Order Is A Subsequent "Revelation," Not A Subsequent "Event"

The basis for dismissing this action under the substantial revelations rule is even stronger than in *Mario, Jones, State Farm* or *Cuneo*, because Plaintiff undeniably lacked standing at the time she filed her complaint. Plaintiff did not suddenly lose standing when the court ruled on the motion to dismiss; rather, she never had standing to begin with because she had never purchased the Non-Purchased Products. Indeed, no more fundamental deficiency can exist at the time of filing than a plaintiff's lack of standing. For this reason, the amount in controversy was *never* met in this case.

Three common (and related) threads run though the decisions finding a lack of jurisdiction based on a subsequent revelation: (1) There was no change of *fact* after the filing of the complaint that affected jurisdiction; (2) A subsequent legal ruling revealed that the complaint was deficient at the time it was filed; and (3) The plaintiff's jurisdictional allegations were not controlling and did not bind the court's jurisdiction.

All three factors are present here. ***First***, no fact has changed after the filing of the complaint. Amy's motion to dismiss the Non-Purchased Product claims for lack of standing and this Court's December 9th Order were based on the fact that Plaintiff had not purchased the fifty-

16

seven Non-Purchased Products. That fact existed at the time the complaint was filed.

***Second***, this Court's Order on Plaintiff's standing constitutes a legal ruling concerning the adequacy of the complaint at the time it was filed. Just as the unjust enrichment claim failed in *Mario*, the royalty claim decreased in *Jones*, the two policies fell from *State Farm* and the claim for compensation was barred by res judicata in *Cuneo*, so too were the claims relating to the fifty-seven Non-Purchased Products dismissed from this case.

***Third***, Plaintiff included jurisdictional allegations in her complaint. Complaint at ¶ 8. But, just as the jurisdictional allegations did not govern the analyses in the other subsequent revelation cases, nor do Plaintiff's allegations impart federal jurisdiction here.

In sum, Plaintiff never met the requisite amount in controversy; her claim was deficient from the day it was filed. No event has occurred stripping her of a single dollar to which she ever had a claim of right; rather, she has merely been told that she never had a right to begin with.

## IV.  CONCLUSION

For the aforementioned reasons, Defendant Amy's Kitchen, Inc. respectfully requests that the Court enter an order granting this Motion to Dismiss for Lack of Subject Matter Jurisdiction.

**CERTIFICATION OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3)**

In accordance with S.D. Fla. L.R. 7.1(a)(3), on December 16, 2013, counsel for Amy's Kitchen conferred with Plaintiff's counsel on the relief requested herein.  Plaintiff's counsel advised that Plaintiff objects to the relief requested herein.

Date:  December 20, 2013				Respectfully submitted,


						By: /s/ Sandra J. Millor
						LAWRENCE SILVERMAN
						Florida Bar No. 7160
						lawrence.silverman@akerman.com
						SANDRA J. MILLOR
						Florida Bar No. 13742
						sandra.millor@akerman.com

						**AKERMAN LLP**
						(f/k/a Akerman Senterfitt)
						One S.E. Third Avenue – 25th Floor
						Miami, FL 33131-1714
						Tel: 305-374-5600
						Fax: 305-374-5095

						-and-

						MICHAEL L. RESCH
						(admitted *Pro Hac Vice*)
						California State Bar No. 202909
						MResch@mayerbrown.com
						DALE J. GIALI (admitted *Pro Hac Vice*)
						California State Bar No. 150382
						DGiali@mayerbrown.com
						ANDREA M. WEISS (admitted *Pro Hac Vice*)
						California State Bar No. 252429
						AWeiss@mayerbrown.com

						**MAYER BROWN LLP**
						350 South Grand Avenue, 25th Floor
						Los Angeles, CA 90071
						Tel: 213-229-9500
						Fax: 213-625-0248

						*Attorneys for Defendant Amy's Kitchen, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF this 20th day of December 2013. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via Notice of Electronic Filing generated by CM/ECF.

                                        */s/ Sandra J. Millor*_____
                                          SANDRA J. MILLOR

**SERVICE LIST:**

Lance A. Harke, P.A.
Florida Bar No. 863599
lharke@harkeclasby.com

Sarah Clasby Engel, P.A.
Florida Bar No. 991030
sengel@harkeclasby.com

Howard M. Bushman, P.A.
Florida Bar No. 0364230
hbushman@harkeclasby.com

HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, FL 33138
Tel: (305) 536-8220
Fax: (305) 536-8229

*Co-Counsel for Plaintiffs*