UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:13-cv-21525-JIC

LESLIE REILLY, an individual,
on behalf of herself and all others similarly
situated,

    Plaintiff,

v.

AMY'S KITCHEN, INC.,
a California corporation.

    Defendant.
_____/

**DEFENDANT AMY'S KITCHEN, INC.'S**
**RESPONSE TO MOTION FOR DETERMINATION OF PRIVILEGE**

Defendant, Amy's Kitchen, Inc., ("Amy's") hereby responds to plaintiff's second amended motion for determination of privilege (D.E. 68).[1]

**I.    PRELIMINARY STATEMENT**

Since May 2012, no less than 49 consumer class action lawsuits have been filed against food companies for using "evaporated cane juice" (or "ECJ") as the name of an ingredient in a food product.[2] From May 14, 2012 to June 12, 2012, alone, no less than four such lawsuits were filed, including two lawsuits against Chobani Greek Yogurt.[3] Three of those lawsuits were filed in the Northern District of California, *i.e.*, right in Amy's backyard.

---

[1] This responsive brief is filed concurrently with supporting declarations from Nancy Knight, Leslie T. Krasny, Timothy M. Ross and Dale J. Giali.

[2] The slew of "evaporated cane juice" cases are part of a larger tidal wave of more than 400 consumer class action lawsuits filed nationwide against food companies alleging label-based false advertising. Knight Decl., ¶¶ 8, 20, 22; Krasny Decl., ¶¶ 3, 8, 9.

[3] *See Kane v. Chobani, Inc.*, No. 5:12cv2425 (N.D. Cal. May 14, 2012); *Wedebaugh v. Blue Diamond Growers*, No. 5:12cv2724 (N.D. Cal. May 29, 2012); *Bernaz v. Chobani, Inc.*, No. 1:12cv2845 (E.D.N.Y. June 6, 2012); *Smedt v. The Hain Celestial Group*, No. 5:12cv2908 (N.D. Cal. June 12, 2012).

Against this backdrop – *i.e.*, knowing that the food industry was under siege from false advertising cases and with specific knowledge that Chobani had just been sued for use of "evaporated cane juice" as the name of an ingredient – in early June 2012, Amy's did what responsible companies do. In anticipation of the same evaporated cane juice claims being filed against it, Amy's formed an internal task force with expertise in the subject matter to assess the litigation risk to Amy's based on its use of "evaporated cane juice" as the name of an ingredient in more than 100 of its products.[4] The resulting written, confidential report – an "Evaporated Cane Juice Situation Assessment" (hereinafter "ECJ Situation Assessment") – was made for the express purpose of assessing the risk and managing the potential for anticipated litigation against Amy's.[5]

The final version – and every draft leading to it – were treated as privileged and confidential documents and were stamped on the cover as "privileged and confidential." Knight Decl., ¶ 11. A draft of the ECJ Situation Assessment was forwarded to Amy's outside regulatory attorney, Leslie Krasny. Knight Decl., ¶ 12; Krasny Decl., ¶ 12. Verbatim comments from Ms. Kransy appear in the final ECJ Situation Assessment. *Id*. The ECJ Situation Assessment memorialized the analysis and recommendations of the task force with respect to the risk and management of anticipated ECJ litigation, and was eventually transmitted to Amy's president and owner.

---

[4] Of course, Amy's concern over anticipated litigation turned out to be justified, as it has now been sued four separate times in four separate jurisdictions over evaporated cane juice.

[5] During the period between the initial draft of the ECJ Situation Assessment in mid-June 2012 and the August 23, 2012 final version, no less than three additional consumer class actions were filed challenging food companies that listed ECJ as an ingredient in their products. *See, e.g., Gitson v. Modesto Wholesoy Co.,* No. CGC-12-522338 (S.F. Sup. Ct. July 12, 2012); *Ivie v. Kraft Foods,* No. 5:12cv2554 (N.D. Cal. Aug. 20, 2012 amended complaint); *Rosales v. Chobani, Inc.*, No. 3:12cv2071 (S.D. Cal. Aug. 22, 2102).

A more paradigmatic example of work product prepared in anticipation of litigation – with the assistance of outside counsel – would be hard to find. And the immunity from discovery that attaches to such work product and attorney-client communications in any ensuing litigation is not a close call. Subject to limited exceptions not applicable here, plaintiff

> may *not* discover documents and tangible things that are ***prepared in anticipation of litigation*** . . . ***by*** . . . ***another party*** or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). As this Court recently confirmed in a ruling holding documents were immune from discovery under Rule 26(b)(3)(A):

> The Supreme Court has articulated that the purpose of work product protection is to immunize the work product of an attorney *or his agents* from discovery, so that they can analyze and prepare their client's case for litigation. Work product extends beyond the lawyer's own preparation; it may be protected as long as it has been prepared in anticipation of litigation by ***any*** representative or agent ***of the party*** asserting the privilege. [¶] Therefore, it is immaterial that certain documents have been prepared by parties other than Plaintiff's counsel, because the withheld documents were indeed prepared by Plaintiff or Plaintiff's agents with an eye toward litigation, as contemplated by Rule 26(b)(3)(A) . . . . The content of communications . . . are also privileged because they contain Plaintiff's mental impressions and legal theories prepared in anticipation of litigation. As such, Plaintiff properly asserted the work product

> privilege over the withheld documents, because they contain the mental impressions and legal theories of Plaintiff and were prepared in anticipation of litigation by Plaintiff and its agents.

*Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, 2011 WL 2682958, at *2 (S.D. Fla. July 11, 2011) (emphasis in original and added; citations omitted); *see also Every Penny Counts, Inc. v. American Express Co.*, 2008 WL 2074407, at *1 (M.D. Fla. May 15, 2008) (work product "doctrine may apply to non-lawyers affiliated with the party").

Based on the undisputable record set out in the accompanying declarations of Nancy Knight and Leslie Krasny, the exact same result is warranted here. Accordingly, the privileged documents that have been produced should be deemed privileged and non-discoverable under the work product doctrine. Likewise, much of the material also reflects communication between Amy's and its outside counsel, Ms. Kransy, and, accordingly is classic attorney-client communication that is privileged from production. Fla. Stat. Ann. § 90.502 (West).[6]

Plaintiff argues that Amy's has "voluntarily produced" these privileged documents and, accordingly, has no claim to "inadvertence." D.E. 68, p. 2 of 5. But even assuming that were the standard, the privileged documents were not "voluntary produced" in any manner that makes legal sense. As the record demonstrates, Amy's did not intentionally waive any privileges or immunities. Neither the architect of the ECJ Situation Assessment (Nancy Knight) nor Amy's outside regulatory counsel (Leslie Kransy) ever intended, nor did, waive or relinquish any

---

[6] A chart that individually itemizes the specific documents that are the subject of Amy's notices of inadvertent production is attached as Exhibit 1 to the declaration of Dale J. Giali. The chart provides the basis for non-discoverability for each document. There are several documents that were part of groupings of privileged documents for which Amy's is not claiming privilege, and as to those documents Amy's is not asking for their return. Giali Decl., ¶ 27 & Ex. 1.

4

privileges or immunities. Knight Decl., ¶ 3; Krasny Decl., ¶ 7. Every version of the ECJ Situation Assessment was stamped "privileged and confidential." Knight Decl., ¶ 11.

Moreover, given the parameters that Amy's former litigation counsel placed on privilege review of Amy's documents, he did not look for, understand the significance of, or think about discovery immunity regarding the ECJ Situation Assessment and communications relating to it. Giali Decl., ¶¶ 3-9, 21-26. In other words, Amy's former litigation counsel did not know that the ECJ Situation Assessment documents were prepared in anticipation of litigation or were immune from discovery under the work product immunity doctrine, and had no intention of producing privileged documents, as even plaintiff's counsel agrees (D.E. 68, pp. 3 of 5 & 4 of 5). As such, it was not a "voluntary" production, and there could be no knowing or voluntary waiver of the immunities, especially given that the immunities did not belong to litigation counsel and could not be unknowingly waived in the manner plaintiff asserts here.

For these reasons, and as detailed below, Amy's respectfully requests that the ECJ Situation Assessment and related documents (separately itemized at Exhibit 1 to Giali Decl.) be deemed privileged from discovery and inadvertently produced, and returned to Amy's.

## II.     RELEVANT FACTUAL RECORD

After collecting over 89,000 pages of documents, Amy's Kitchen produced 10,211 pages of documents in electronic form on November 7, 2013. D.E. 68-3, p. 2 of 2; Giali Decl., ¶ 2. All of the documents that are the subject of this motion were in Amy's November 7 production and were produced as "confidential" under the Court's protective order. Giali Decl., ¶ 2. On November 13, 2013, a week after the November 7 production, Mayer Brown attorneys appeared in this case for the first time. D.E. 47.

Shortly after being retained in the action, Mayer Brown attorneys discovered that Amy's ECJ Situation Assessment had been produced. Giali Decl., ¶ 4. Mayer Brown recognized the

5

ECJ Situation Assessment as likely an internal, confidential report specifically prepared by Amy's for the primary purpose of preparing for or managing anticipated litigation. *Id*., ¶ 5. The timing of the "Situation Assessment" was particularly significant in leading Mayer Brown to that conclusion because an evaporated cane juice litigation had been filed against Chobani, Inc. in May 2012 in the Northern District of California – *i.e.*, a lawsuit filed shortly before the preparation of the ECJ Situation Assessment and in a court very close to Amy's headquarters in Petaluma, California. *Id*. Mayer Brown immediately began the process of collecting and reviewing the record on the purpose and preparation of the internal, confidential ECJ Situation Assessment. *Id*.

The record confirmed what Mayer Brown surmised, *i.e.*, the ECJ Situation Assessment was prepared on behalf of Amy's with the primary motivating purpose to aid in anticipated litigation. Knight Decl., ¶ 2, 10-27; Krasny Decl., ¶¶6-12. In June 2012 – in response to the food false advertising consumer class action litigation landscape at the time, and specifically the May 2012 ECJ lawsuit against Chobani – Amy's Technical Services Manager Nancy Knight prepared the first draft of the ECJ Situation Assessment. Knight Decl., ¶ 10. From the very beginning of her work in June 2012, Ms. Knight considered her work to be privileged from discovery by outsiders and confidential, and she labeled the draft and final reports as "privileged and confidential" for that purpose. *Id*., ¶ 11.

Moreover, from the beginning of her work, Ms. Knight understood the ECJ Situation Assessment would be shared with outside legal counsel in the event of litigation and, on August 19, 2012, a draft was, in fact, sent by Ms. Night to Ms. Kransy, one of Amy's Kitchen's outside attorneys. *Id*., ¶¶ 12, 19; Krasny Decl., ¶ 12. Back-and-forth confidential, privileged communications occurred between Ms. Krasny and Ms. Knight and other Amy's personnel about

6

ECJ litigation and litigation risk.  Knight Decl., ¶¶ 19-24; Kransy Decl., ¶¶ 9-12.  Verbatim statements from Ms. Krasny were included in the final version of the ECJ Situation Assessment.  Knight Decl., ¶ 25; Kransy Decl., ¶ 12.  After Ms. Krasny's review, the ECJ Situation Assessment was eventually transmitted by Ms. Knight to Amy's President and Owner.  Knight Decl., ¶ 18.

On November 7, 2013, several drafts and the final version of the ECJ Situation Assessment, as well as related e-mail correspondence, were inadvertently produced in this action by Amy's former litigation counsel.  Giali Decl., ¶ 2.  Amy's new litigation counsel uncovered the inadvertent production relatively quickly (*id*., ¶¶ 3-9), and quickly provided written notice to plaintiff on November 27, less than three weeks after the inadvertent production was made (*id*., ¶¶ 10, 17-18).

On December 4, 2013 – in the first communication from plaintiff's counsel following Amy's written November 27 notice of the inadvertent production – plaintiff's counsel asked that Amy's "withdraw the request for the documents' return and . . . produce these documents in an unredacted form."  D.E. 68-5, 11 of 12.  That same day, Amy's attorneys responded by requesting a "meet and confer" to discuss the issues, suggesting specific days and times for such a meeting.  D.E. 68-5, 10 of 12.  Amy's attorneys communicated that they were prepared to provide the additional detail they had at that time and engage in a continuing conversation in support of the claim of inadvertent production, privilege and immunity.

On December 4 (and even though there had not yet been *any* meet and confer over the issues raised by Amy's November 27 notice), plaintiff's counsel questioned "why" a "*further* meet and confer [would] . . . be appropriate."  D.E. 68-5, p. 10 of 12 (emphasis added).  Amy's counsel responded the same day that they believed the parties should meet and confer prior to

any motion practice and that as part of the meet and confer process they would try to address any questions plaintiff's counsel had about our claim of inadvertent production of privileged documents.  D.E. 68-5, 9 of 12.

On December 5, however, plaintiff's counsel wrote that Amy's had "indicated no flexibility" and, accordingly, it was plaintiff's counsel's position that "the issue is joined."  *Id*.  Plaintiff's counsel went on to state that "if" Amy's is prepared to "compromise," counsel should contact them.  *Id*. (emphasis added).  But, before 3 p.m. Pacific time that same day – *i.e.*, before Amy's counsel was able to contact plaintiffs' counsel and without a meet and confer session ever occurring – plaintiff's counsel served their motion for determination of Amy's claim of privilege.  D.E. 58, 59.

### III. THE "ECJ SITUATION ASSESSMENT" AND RELATED COMMUNICATIONS – ARE PRIVILEGED FROM DISCOVERY UNDER THE PARTY WORK PRODUCT IMMUNITY DOCTRINE

Unambiguous federal law provides that plaintiff "may not discover documents and tangible things that are prepared in anticipation of litigation . . . by" Amy's personnel.  Fed. R. Civ. P. 26(b)(3)(A).[7]  As numerous court decisions recognize, such material is work product, and is immune from discovery, whether an attorney is involved in the materials or not.  *See, e.g., Mitsui Sumitomo Ins. Co.*, 2011 WL 2682958, at *2; *Every Penny Counts, Inc.*, 2008 WL 2074407, at *1.  Here, of course, Amy's outside food regulatory attorney, Leslie Krasny, was involved in the process and her statements were included verbatim in the final version of the ECJ Assessment.  Accordingly, the ECJ Assessment is the result of both Amy's work product and Ms. Krasny's work product.

---

[7] The work product doctrine is governed by federal law where, as here, the case is pending in federal court.  *Commercial Long Trading Corp. v. Scottsdale Ins. Co.*, 2012 WL 6850675 (S.D. Fla. Dec. 26, 2012).

8

In all respects, the ECJ Situation Assessment, and related e-mail correspondence, meet the requirements of the work product doctrine set out at Fed. R. Civ. P. 26(b)(3)(A) and are immune from discovery in this action based on that Rule and the court decisions applying it. Knight Decl., ¶ 2, 10-27; Krasny Decl., ¶¶6-12.[8]

IV.   **THE "ECJ SITUATION ASSESSMENT" AND RELATED COMMUNICATIONS WITH LESLIE KRASNY ARE PRIVILEGED FROM DISCOVERY UNDER THE ATTORNEY-CLIENT COMMUNICATION PRIVILEGE AND ATTORNEY WORK PRODUCT IMMUNITY DOCTRINE**

Several of the documents that are the subject of this motion reflect direct, confidential communications between Amy's and its outside attorney, Leslie Krasny. *See* Giali Decl., Ex. 1. In addition to immunity under the work product doctrine, such documents are also immune from discovery under the attorney-client communication privilege. Fla. Stat. Ann. § 90.502 (West); Cal. Evid. Code § 954 (West).[9]  The policy reasons behind the attorney-client privilege are fully applicable here:

---

[8] In her moving papers, plaintiff argues that Amy's has not "established" privilege. D.E. 68, 1 of 5.  But, this brief represents the first opportunity Amy's has had to present the full legal and factual record on that issue.  To the extent plaintiff insinuates that Amy's November 27, 2013 written notice of the inadvertent production needed to include a full factual and legal record, she is mistaken.  *See* § VI, *infra*.  Moreover, it is more than a bit ironic that plaintiff would make such an argument given she refused meet and confer efforts that would have provided the very information she claims to be missing.

[9] Many decisions recognize that attorney-client privilege issues in cases pending in Florida federal court should be decided under Florida law.  *Tolz v. Geico Gen. Ins. Co.*, 2010 WL 384745 (S.D. Fla. Jan. 27, 2010) (The attorney-client privilege is a matter of substantive law governed by the law of the forum state in federal diversity cases."); *Affordable Bio Feedstock, Inc. v. Darling Int'l Inc.*, 2012 WL 5845007 (M.D. Fla. Nov. 19, 2012) ("Because this is a diversity case, Florida law controls the application of the attorney-client privilege.").  Other decisions opt in favor of a conflict of laws analysis.  *Anas v. Blecker*, 141 F.R.D. 530, 531 (M.D. Fla. 1992) (applying state conflict of law rules when the only claims remaining in the case were state law claims).  Given the clear nature of the attorney-client communication at issue here, it does not matter whether the law of the forum (Florida) or the law where the communications have the greatest nexus (California) is applied.  Both hold that the communications at issue here are privileged and non-discoverable.  Fla. Stat. Ann. § 90.502 (West); Cal. Evid. Code § 954 (West); *Lemonik v. E. Airlines, Inc.*, 632 So. 2d 239 (Fla. Dist. Ct. App. 1994); *Scripps Health v. Superior Court*, 109 Cal. App. 4th 529, 534 (2003).

> [Attorney-client privilege] is . . . not only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."

*Am. Tobacco Co. v. State*, 697 So. 2d 1249, 1252 (Fla. Dist. Ct. App. 1997).

## V.     THE PRODUCTION OF THE SUBJECT DOCUMENTS WAS INADVERTENT

Neither Ms. Knight, the author of the ECJ Situation Assessment, nor Ms. Krasny, Amy's outside counsel, intended to waive any privileges or immunities that attached to communications, documents and other work product.  Knight Decl., ¶ 3; Krasny Decl., ¶ 7.  Amy's prior litigation counsel never discussed with them their work or communications relating to the ECJ Situation Assessment.  *Id*.

As plaintiff's counsel recognizes (indeed, argues as a point in plaintiff's favor), Amy's prior counsel also had no intention of producing privileged documents, given that he "reviewed" the documents to be produced and, only "after careful review," "intentionally redacted certain information and voluntarily produced" the documents to plaintiff.  D.E. 68, pp. 3 of 5 & 4 of 5. As is evident from the record, Amy's prior counsel was focused on identifying specific and direct attorney involvement in the specific documents under consideration and, as to such documents, they would not be produced.[10]

---

[10] In at least two instances, this system failed and documents constituting or memorializing direct communications between Amy's and their attorney, Ms. Krasny, were inadvertently produced

10

As the record reflects, Amy's prior counsel was unaware that the documents at issue in this motion were prepared in anticipation of litigation and did not look for or hold back as privileged such work product prepared in anticipation of litigation. Giali Decl., ¶¶ 21-26. Given the parameters that Amy's former counsel placed on the privilege review, counsel did not look for, understand the significance of, or think about immunity from discovery relating to the set of documents and communications relating to work product associated with the "ECJ Situation Assessment." In other words, he did not know that that set of documents was immune from discovery under the work product immunity doctrine.

Under this record, it is beyond question that the materials were inadvertently produced and should be returned. *See In re Se. Banking Corp. Sec. & Loan Loss Reserves Litig.*, 1996 WL 34491908 (S.D. Fla. July 8, 1996) (inadvertent production of privileged material); *Nat'l Helium Corp. v. United States*, 219 Ct. Cl. 612, 613, 616 (1979) (no waiver); *In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 58-59 (S.D.N.Y. 1994) ("Waiver is defined as the intentional relinquishment of a known right"); *see also Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 698 (N.D. Ga. 2010) (production of privileged documents deemed inadvertent and ordered returned); Fed. R. Evid. 502(a) (explicit waiver requires intention); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (implicit waiver occurs where the asserting party puts the privileged information at issue in the case); *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011).

**VI.     AMY'S PROVIDED PROPER AND TIMELY NOTICE OF THE INADVERTENT PRODUCTION**

---

(AK3070, AK8587). Those documents are subject to this motion proceeding (D.E. 68-5, pp., 2 of 12 & 3 of 12), and Amy's requests that they be returned. Other versions of AK8587 were produced in a redacted form (*see, e.g.*, AK3120, AK9984), and other e-mail communications with Mr. Kransy (including the one captured in AK3070) were withheld from production as privileged, more than establishing that it clearly was Amy's intent not to produce documents memorializing communications and work product of Ms. Krasny.

Plaintiff attempts to make much of the fact that Amy's has provided "four separate" notices of privileged documents encompassing "thirty two" documents. D.E. 68, p. 1 of 5. Taken in context, however, there is nothing improper about the manner in which Amy's has provided notice of the inadvertent production and neither the number of communications or the total documents involved control the issue. First, Amy's has been very diligent in bringing the inadvertent production to plaintiff's attention and has done so as soon as feasibly possible. Giali Decl., ¶¶ 10, 17-20. As soon as Amy's counsel was aware of a legitimate claim of inadvertent production of a privileged document, they provided written notice, including specific identification by production number of the two copies of the ECJ Situation Assessment that they found in the production database. Late in the day on November 25, 2012, Amy's counsel identified a single copy of the ECJ Situation Assessment in the production database. After confirming the nature of the document and looking for additional inadvertently-produced documents and the circumstances surrounding the ECJ Situation Assessment, Amy's counsel provided written notice to plaintiff on November 27.

Second, while there may be multiple documents involved, they all relate to the same ECJ Situation Assessment, including copies and various drafts of the same report and related communications. There is nothing remarkable in this day and age of electronic media that there would be multiple documents involved even with respect to a very limited and discrete inadvertent production.

Third, unbeknownst to Amy's attorneys, there was an anomaly with the electronic search function of the document database. Giali Decl., ¶ 20; Ross Decl. ¶ 3. The searching anomaly meant that Amy's counsel was (unknowingly) unable to get accurate search results when they attempted to locate all copies and versions of the ECJ Situation Assessment. *Id*. And, of course,

all of this was going on during the time Amy's litigation counsel was getting up to speed on the case, having just been retained. Giali Decl., ¶¶ 2, 3.

Nevertheless, Amy's counsel kept reviewing the production database and provided additional notice as soon as they became aware of additional related documents. While plaintiff tries to claim some sort of prejudice or wrongdoing on Amy's part, the argument does not hold up. Plaintiff knew exactly the category of documents that was at issue from the very first notice on November 27. Indeed, during one call with Amy's counsel following Amy's final notice, *plaintiff's counsel* volunteered that Amy's had finally found all the ones *plaintiff's counsel* was aware of. By providing notice in the manner it did, Amy's got the pertinent information to plaintiff as soon as feasible, and followed it up as soon as supplemental information became available.

Plaintiff also tries to indicate that Amy's notice was somehow deficient because it did not provide enough detail to establish the privilege. But, Amy's notice provided more than sufficient notice. D.E. 68-3; *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 694 (S.D. Fla. 2009) (notification of claim that document was privileged and request that it be returned deemed sufficient); *Piasa Commercial Interiors, Inc. v. J.P. Murray Co.*, 2010 WL 1241563 (S.D. Ill. Mar. 23, 2010) (assertion that document is privileged at a deposition with follow up letters deemed sufficient); *Diesel Mach., Inc. v. Manitowoc Cranes, Inc.*, 2011 WL 1343121 (D.S.D. Apr. 7, 2011) (finding that request to return an inadvertently produced CD that failed to state the material was privileged was sufficient).

The authority cited by plaintiff, *St. Cyr v. Flying J, Inc.*, 2008 WL 2097611 (M.D. Fla. May 16, 2008), provides no support for plaintiff's position. The *St. Cyr* decision does not address, nor turn on, what needs to go into a notice of inadvertent production, nor does it state

13

that legal authority or extensive factual work up is required.  Indeed, the case seems to imply that identifying the privilege simply as "work product" would be sufficient to satisfy the notice requirement.  *Id*. at *6.

Plaintiff's citation to "Advisory Committee Notes" is likewise unavailing as the notes do not address how specific the notice needs to be other than to say it should identify the documents and the basis for the claim.  Amy's notice does exactly that.  Indeed, based solely on Amy's November 27 written notice, plaintiff's counsel concluded that the issue was "joined" (D.E. 68-5, p. 9 of 12), and he was fully able to file his motion with the Court.

Finally, the notice issue plaintiff now raises is particularly weak in light of plaintiff's failure to avail herself of the meet and confer session that Amy's repeatedly requested.  Giali Decl., ¶¶ 11-16.

## CONCLUSION

For the aforementioned reasons, Amy's Kitchen, Inc. respectfully asks the Court to rule in favor of Amy's Kitchen and order all inadvertently-produced documents to be returned to Amy's consistent with Exhibit 1 to the Declaration of Dale J. Giali.

Date: January 8, 2014

Respectfully submitted,

By: /s/ Sandra J. Millor
LAWRENCE SILVERMAN
Florida Bar No. 7160
lawrence.silverman@akerman.com
SANDRA J. MILLOR
Florida Bar No. 13742
sandra.millor@akerman.com

**AKERMAN LLP**
(f/k/a Akerman Senterfitt)
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel: 305-374-5600
Fax: 305-374-5095

-and-

MICHAEL L. RESCH
(admitted *Pro Hac Vice*)
California State Bar No. 202909
MResch@mayerbrown.com
DALE J. GIALI (admitted *Pro Hac Vice*)
California State Bar No. 150382
DGiali@mayerbrown.com
ANDREA M. WEISS (admitted *Pro Hac Vice*)
California State Bar No. 252429
AWeiss@mayerbrown.com

**MAYER BROWN LLP**
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel: 213-229-9500
Fax: 213-625-0248

*Attorneys for Defendant Amy's Kitchen, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF this 20th day of December 2013. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via Notice of Electronic Filing generated by CM/ECF.

                                              */s/ Sandra J. Millor*
                                              SANDRA J. MILLOR

**SERVICE LIST:**

Lance A. Harke, P.A.
Florida Bar No. 863599
lharke@harkeclasby.com

Sarah Clasby Engel, P.A.
Florida Bar No. 991030
sengel@harkeclasby.com

Howard M. Bushman, P.A.
Florida Bar No. 0364230
hbushman@harkeclasby.com

HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, FL 33138
Tel: (305) 536-8220
Fax: (305) 536-8229

*Co-Counsel for Plaintiffs*