UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:13-CV-21525-JIC

LESLIE REILLY, an individual,
on behalf of herself and all others similarly
situated,

        Plaintiff,

v.

AMY'S KITCHEN, INC., a California
corporation,

        Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT
AMY'S KITCHEN, INC.'S SECOND MOTION TO DISMISS**

Plaintiff Leslie Reilly (hereinafter "Plaintiff") on behalf of herself and all others similarly situated, respectfully responds in opposition to Defendant Amy's Kitchen, Inc.'s Second Motion to Dismiss [D.E. 70] ("Motion") and states as follows:

**I.    Introduction**

Defendant has filed this motion in a desperate attempt to avoid having this Court review and consider significant and damaging documents which have been presented for *in camera* review.[1] However, Defendant's motion is wholly deficient because long-standing case law holds that the amount-in-controversy in an action is determined at the time of filing and Defendant does not contest Plaintiff's original allegations met the amount-in-controversy requirement. Further, the existence of Plaintiff's current claim for damages, injunctive relief, and attorney's

---

[1] Defendant mistakenly believes that, if dismissed and this action proceeds in state court, Plaintiff will not be able to obtain the incriminating documents that are the subject of Plaintiff's Second Amended Motion for Determination of Privilege [D.E. 68].

fees and costs, as well as the existence of Plaintiff's plenary appeal rights (all but the damages claims were completely ignored by the Defendant), reveals that Defendant cannot meet its burden to show that it would be "impossible" for Plaintiff to recover more than $5 million in this litigation. Accordingly, the Motion should be denied.

## II.     Background

Discovery in this action has revealed serious corporate malfeasance on the part of Amy's Kitchen related to its inclusion of the term "Evaporated Cane Juice" ("ECJ") on its products, instead of what it really is, "Sugar."

In 2008, Defendant was made aware that the FDA's position was that the listing of ECJ on its project packaging was deceptive. Instead of changing the packaging, Defendant continued to market its products with ECJ. The FDA never agreed with Defendant's position or blessed its labeling. Indeed, over the next few years, Defendant's employees were confronted with multiple questions from major retailers and customers regarding the questionable labeling of ECJ, and agreed to engage in yearly conferences related to whether to keep ECJ on its labels. As a result of complaints from customers (both individuals and through retailers), Defendant removed its ECJ listing from products sold outside the United States, but did not, and has not, changed its packaging for its domestic market.

The reason for this is that Defendant knows ECJ is just sugar, but "sugar" is a term that Defendant has acknowledged would be seen negatively by its customer base, and thus correctly identifying sugar as an ingredient would hurt sales. Accordingly, Defendant's actions in this matter were an intentional effort to mislead the consuming public about its ingredients in order to protect its profits.

The instant motion is merely an attempt to avoid this Court and a jury from reviewing this important evidence. The motion should be denied.

### III. The Litigation

On April 29, 2013, Plaintiff filed her Complaint against the Defendant related to its inclusion of ECJ on the ingredient labeling for its products. [D.E. 1]. Plaintiff seeks to represent a class of Florida purchasers of all products sold by the Defendants which contained ECJ on the product labeling. Defendant moved to dismiss Plaintiff's complaint on various grounds, including standing, failure to state a claim, and FDA's primary jurisdiction over the labeling claims. [D.E. 17]. In its original motion to dismiss, Defendant did not raise any subject matter jurisdiction deficiency arguments.

On December 9, 2013, this Court denied the majority of Defendant's motion, however, it ordered that Plaintiff may proceed only on claims related to the specific products she purchased. [D.E. 60 at 5]. Plaintiff has not filed an amended complaint, and respectfully intends to appeal the Court's limitation of this complaint on a plenary basis at the conclusion of this action.[2] On December 20, 2013, and after eight months of active litigation, Defendant filed the instant motion related to subject matter jurisdiction. Defendant argues, now that the products at issue have been limited, this action does not meet the amount–in-controversy required under the Class Action Fairness Act ("CAFA"), as it would be impossible for the Plaintiff to recover $5 million or more in this litigation. The Motion is without merit.

### IV. The Meet and Confer Sessions

Defendant attempts to use the parties' meet and confer sessions related to this motion as a weapon to support dismissal. Plaintiff does not believe that self-serving select portions of meet

---

[2] A motion for reconsideration on this issue will also be filed in short order.

and confer sessions should be disclosed to the Court in this manner, as such disclosure stifles the ability of attorneys to come up with solutions to issues for fear of having every proposed resolution disclosed to the Court and public. This has already occurred multiple times in this action.

Without dealing with the specifics of the conversations, Plaintiff will only state that Defendant disclosed to Plaintiff that it intended to file the subject motion. Plaintiff explained to Defendant's counsel that any motion in this regard would be fruitless as the overwhelming case law holds that subject matter jurisdiction is determined at the time a complaint is filed and subsequent acts do not affect jurisdiction. Defendant stated that, unless Plaintiff provided specific cases to support her position (Defendant's motion appears to admit it found said cases but have chosen to ignore them), Defendant would file its motion. Plaintiff did not subsequently provide case law to the Defendant as it was clear from the conversations that Defendant planned to file the motion irrespective of anything Plaintiff could do or say.

**V.     Argument**

This Court clearly has subject matter jurisdiction over these claims for three independent reasons. First, the amount-in-controversy is determined when the complaint is filed, or where the Court first assumes jurisdiction, and the Defendants do not dispute that subject matter jurisdiction was present at the time this action was filed. Second, the well-pleaded allegations claimed in good faith control and Plaintiff has claimed the requisite amount-in-controversy. Finally, considering Plaintiff's current claim for damages, injunctive relief, attorney's fees and costs, as well as extant appellate rights, Defendants cannot show that it would be impossible for Plaintiff to recover $5 million dollars or more.

      a.    **The Amount-in-Controversy Requirement Is Determined At the time of Filing of the Complaint.**

In evaluating the amount-in-controversy requirement, a court must examine "the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonso-Larrain,* 490 U.S. 826, 830, 109 S. Ct. 2218 (1989). Post-filing developments are irrelevant and do not divest the district court of jurisdiction. The Senate Judiciary Committee confirmed that a federal court's jurisdiction cannot be ousted by later events. S.Rep. No. 109–14, at 70–71 ("If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court ..."); *Accord, e.g.,* 14AA Charles Alan Wright et al., *Federal Practice and Procedure §* 3702.4 (4th ed.) ("it is well-settled that the amount-in-controversy test and a federal court's subject matter jurisdiction are not dependent upon whether the plaintiff succeeds in the action or the alleged amount actually is recovered by the plaintiff at the end of the case, absent a showing of bad faith").

Applying these principles, the Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all held that a court retains jurisdiction over a case filed or removed under CAFA even if later events appear to compromise subject matter jurisdiction. *See Vega v. T– Mobile USA, Inc.,* 564 F. 3d 1256, 1268 n. 12 (11th Cir. 2009) citing *Cooper v. R.J. Reynolds Tobacco Co.,* 586 F.Supp.2d 1312, 1318–22 (M.D.Fla.2008) ("jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of jurisdiction."); *Metz v. Unizan Bank,* 649 F.3d 492, 500–1 (6th Cir.2011) ("[t]he Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all held that a court retains jurisdiction over a case filed or removed under CAFA even if class certification is denied."); *Charter Corp. v. Learjet, Inc.,* 592 F.3d 805, 506 (7th Cir.2010); *Buetow v. A.L.S.,*

*Enters., Inc.,* 650 F.3d 1178, 1182 n. 2 (8th Cir.2011); *United Steel Workers Int'l Union v. Shell Oil Co.,* 602 F.3d 1087, 1092 (9th Cir.2010).

Even if it is later found that certain requirements under CAFA are not present, it would not divest the court of subject matter jurisdiction under CAFA. *See Kelly v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 768172 *2 (M.D.Fla. 2012) (jurisdictional allegations in the operative complaint at the time the class action reaches federal court control and not subsequent amended complaints or allegations); *Colomar v. Mercy Hospital, Inc.,* 2007 WL 2083562 (S.D.Fla. July 20, 2007). Courts adhere to the principle that "diversity jurisdiction is determined at the time the complaint is filed [therefore, t]he subsequent reduction in the amount-in-controversy and elimination of the class claims does not remove that diversity jurisdiction." *Genenbacher v. CenturyTel Fiber Co. II, LLC,* 500 F.Supp.2d 1014, 1015 (C.D.Ill.2007); *accord Davis v. Homecomings Financial,* 2007 WL 905939, *1 (D.Wash. Mar.22, 2007) (though amount-in-controversy was reduced, jurisdiction continued); *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) ("This time-of-filing rule is hornbook law (quite literally).") (footnote omitted); *LeBlanc v. Cleveland,* 248 F.3d 95, 100 (2d Cir.2001) (per curiam); *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293–95, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (noting that subsequent change of party's citizenship or reduction of amount-in-controversy does not oust federal court of jurisdiction); *Cunningham Charter Corp. v. Learjet, Inc.,* 592 F.3d 805, 807 (7th Cir.2010) ("Our conclusion vindicates the general principle that jurisdiction once properly invoked is not lost by developments after a suit is filed, such as a change in the state of which a party is a citizen that destroys diversity.") (Posner, J.); *In Touch Concepts, Inc. v. Cellco Partnership*, 2013 WL 2455923 (S.D.N.Y.2013) ("the Court retains subject matter jurisdiction even when the claims upon which jurisdiction was originally

premised are dropped by means of an amendment to the pleading.").

As the Seventh Circuit held in *Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 535 (7th Cir.2011):

> Subject-matter jurisdiction depends on the state of things when suit is filed; what happens later does not detract from jurisdiction already established. Thus we held in *Johnson v. Wattenbarger,* 361 F.3d 991 (7th Cir.2004), that a district court may not dispose of some claims on the merits, then dismiss the suit for lack of jurisdiction because the remaining claims fall short of the minimum amount-in-controversy. And we applied this principle to the Class Action Fairness Act in *Cunningham Charter Corp. v. Learjet, Inc.,* 592 F.3d 805 (7th Cir.2010), which holds that § 1332(d) supplies jurisdiction even if the district judge decides not to certify the proposed class. What matters is the size of the proposed class, and the stakes, on the date a suit is filed (or removed under § 1453, if it began in state court).

*Id.; see also Boundas v. Abercrombie & Fitch Stores, Inc.*, 2011 WL 5903495 (N.D.Ill. 2011) (including the value of dismissed claims in the amount-in-controversy as subject matter jurisdiction is determined at the time the complaint is filed, not after the Court dismisses or narrows claims); *Pate v. HNB Nat. Bank*, 2013 WL 1123382 (N.D.Ohio 2013) (once before the Court, a Plaintiff cannot subsequently disclaim certain damages to divest the Court of jurisdiction.); *Klepper v. First Am. Bank,* 916 F.2d 337, 340 (6th Cir.1990) (holding dismissal of the plaintiff's key claims on summary judgment did not affect the amount-in-controversy). "[A] district court may not dispose of some claims on the merits, then dismiss the suit for lack of jurisdiction because the remaining claims fall short of the minimum amount-in-controversy." *Boundas,* 2011 WL 5903495 (N.D.Ill. 2011) (quoting *Morrison,* 649 F.3d at 535).

In this action, there is no dispute that the good faith allegations in Plaintiff's complaint met the amount-in-controversy requirement. *See* [D.E. 1 at ¶ 8] ("The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state

than Defendant, and the amount-in-controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).").[3] The events that occurred after Plaintiff's filing and this Court assuming jurisdiction do not affect this Court's continuing jurisdiction over this action.

### b. Plaintiff's Good Faith Allegations Control

In this Circuit, jurisdictional allegations in the complaint made in good faith control. *See Cappuccitti v. DirecTV, Inc.,* 623 F.3d 1118, (11th Cir. 2010) (where CAFA's jurisdictional amount is pleaded in good faith, the court has jurisdiction)*; Kelly v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 768172 *2 (M.D.Fla. 2012); *see also Stengel v. Black,* No. 03 Civ. 0495(GEL), 2004 WL 1933612, at *1 (S.D.N.Y. Aug. 30, 2004). "[I]n assessing the amount-in-controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 Fed.Appx. 646, 2012 WL 746276 (9th Cir. 2012) (internal citations omitted). "CAFA jurisdiction does not turn on what Plaintiffs may ultimately prove, but on whether the alleged facts are sufficient to satisfy the jurisdictional requirements." *See Kelly,* 2012 WL 768172 at *2; *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 751 (11th Cir.2010).

There is no argument that Plaintiff's allegations were not in good faith or otherwise improper. Indeed, Courts have routinely held that a plaintiff has standing to maintain claims based on products they actually purchased and products "nearly identical to the claims for the purchased product." *Lanovaz v. Twinings N. Am., Inc.,* 2013 WL 675929 *4 (N.D.Cal. Feb. 25,

---

[3] The cases Defendant cites are distinguishable and do not support dismissal here. *See Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006) (affirming remand where plaintiff did not claim any specific amount in damages and it cannot be said with certainty that amount-in-controversy has been met); *Thomas v. Bank of Am. Corp.*, 570 F.3d 1280 (11th Cir. 2009) (remand appropriate where complaint did not indicate the number of individuals in either of the proposed classes or the monetary amount of the recovery they were seeking).

2013); *Miller v. Ghirardelli Chocolate Co.,* 2012 WL 6096593, at *6 (N.D.Cal. Dec. 7, 2012) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."); *Aguilar v. Boulder Brands, Inc*., 2013 WL 2481549, *2 (S.D. Cal. June 10, 2013) (Plaintiff has standing where she alleged "that her injury resulted from a misrepresentation that is identically expressed on the labels of each product at issue"); *Cardenas v. NBTY, Inc.,* 870 F.Supp. 2d 984, 992 (E.D.Cal.2012) (plaintiff had standing to pursue claims against all products that shared similar ingredients and representations).

Plaintiff's allegations relating to all of the Amy's products which contained ECJ were well founded and made in good faith. They should control in this instance for purposes of subject matter jurisdiction.

### c.     Defendant Cannot Show That It Would Be Impossible for Plaintiff to Recover $5 million or More in this Litigation.

Even if the Court took into consideration the actual products now at issue as opposed to products claimed in the Complaint, it cannot be said with certainty that Plaintiff would ultimately recover less than the jurisdictional threshold amounts when you factor in the relief sought in this litigation which includes monetary damages,[4] injunctive relief, and attorneys' fees and costs. Further, at the conclusion of this litigation, Plaintiff intends to appeal the ruling limiting the products at issue, which could lead to many millions in additional damages and other relief.

A suit may not be dismissed for lack of the jurisdictional amount-in-controversy unless it appears 'to a legal certainty' that the plaintiff cannot recover the amount claimed." *Hines v.*

---

[4] Defendant's Motion unilaterally narrows the class period to the filing date of the Complaint, however, Defendant continues to sell the products at issue with ECJ on the label. Therefore, the damages are actually greater as the class period is much larger and continuing to grow.

*Overstock.com, Inc.*, 2013 WL 4495667. (E.D.N.Y. 2013) (affidavit by defendant of sales numbers of $1,529,799.98 was insufficient to prove that it would be impossible for plaintiff to recover over $5 million). "The legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved ... in favor of the subjective good faith of the plaintiff." *Id.* (quoting *Stengel v. Black,* No. 03 Civ. 0495(GEL), 2004 WL 1933612, at *1 (S.D.N.Y. Aug. 30, 2004); *see also Rance v. D.R. Horton, Inc.*, 316 Fed.Appx. 860, 2008 WL 3864285 (11th Cir 2008) (dismissal is not proper unless pleadings make it clear to a legal certainty that the claim is really for less than the jurisdictional amount); *Kruse, Inc. v. Aqua Sun Investments, Inc.*, 2008 WL 276030 (M.D.Fla. 2008) (A claim should only be dismissed for failure to satisfy the amount-in-controversy requirement if it is apparent to a "legal certainty" that a plaintiff cannot recover more than the jurisdictional amount.).

### i. Injunctive Relief

For purposes of calculating the amount-in-controversy, the Court can take into consideration the value of the injunctive relief sought by the Plaintiff in calculating the amount-in-controversy. *See Technomedia Solutions, LLC v. Scopetto*, 2013 WL 6571558 (M.D.Fla. 2013). "When a plaintiff seeks injunctive or declaratory relief, the amount-in-controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir.2003). At trial, plaintiff intends to produce evidence that the injunctive relief of removing the deceptive labeling would reap significant benefits to the class, over and above any monetary damages.[5]

---

[5] The injunctive relief and declaratory judgment will not be as limited in scope as the damages. *See Davis v. Powertel, Inc.,* 776 So.2d 971, 975 (Fla. 1st DCA 2000) (allows a declaration that

ii.     Attorney's Fees and Costs

Under Florida's Deceptive and Unfair Trade Practices Act, if successful, Plaintiff will make an application for her reasonable attorney's fees and costs. Since this award of attorney's fees and costs is statutory in nature, the Court could take the alleged attorneys' fees into account in this instance. "[T]he general rule is that attorneys' fees do not count towards the amount-in-controversy unless they are allowed for by statute or contract." *Technomedia Solutions, LLC v. Scopetto*, 2013 WL 6571558 (M.D.Fla. 2013) (including the value of the attorney's fees and injunctive relief when determining the amount-in-controversy) (quoting *Federated,* 329 F.3d at 808 n. 4 (citing *Graham v. Henegar,* 640 F.2d 732, 736 (5th Cir.1981); *Campbell v. Vitran Exp., Inc.*, 471 Fed.Appx. 646, 2012 WL 746276 (9th Cir. 2012) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount-in-controversy.").

iii.    Plaintiff's Potential Plenary Appeal

Respectfully, at the conclusion of this litigation, Plaintiff intends to file a plenary appeal on the Court's limitation of this action to the products purchased by Plaintiff. There is a possibility that said appeal would be favorably received by the Eleventh Circuit. Accordingly, it is not impossible that those damages would be recoverable, easily meeting the jurisdictional threshold.

    d. **Defendant's Caselaw is Readily Distinguishable or Completely Supports the Plaintiff.**

In a last ditch effort to "stick a square peg into a round hole," the Defendant attempts to misconstrue the Court's dismissal ruling as some "revelation" that subject matter jurisdiction was

---

the violation has occurred and allows a remedy that can be broader than the individual claims and even "not benefit the individual consumers who filed the suit").

always lacking at the time the Plaintiff filed the complaint. Putting aside that the Court's dismissal ruling has not revealed that subject matter jurisdiction is lacking as evidenced by the currently pending claims for damages, injunctive relief, attorneys' fees and costs, and appellate rights, the dismissal of claims, or lowering of available damages, does not affect the amount-in-controversy at issue in litigation. *See* Section V(a) *supra*; *Cambridge Management Group, LLC v. Baker*, 2013 WL 1314734 (D.N.J. 2013) (voluntary reduction in the amount-in-controversy was not a subsequent revelation which required dismissal for lack of subject matter jurisdiction); *Huber v. Taylor*, 532 F.3d 237 (3rd Cir. 2008) (ultimately failing to prevail on claims is a subsequent event that does "*not* oust the court of subject matter jurisdiction."); *Rosado v. Wyman,* 397 U.S. 397, 405 n. 6, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (noting "the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though ... the amount recovered falls short of [the statutory minimum]").

Indeed, three of the cases cited by the Defendant *support* jurisdiction in this action. In *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1 (1st Cir. 1995), the Court found that subsequent actions do not divest the Court of jurisdiction when the allegations of the complaint are pled in good faith. *Id.* (reversing dismissal for lack of subject matter jurisdiction when amount-in-controversy was pled in good faith at the outset of the litigation and even where Plaintiff voluntarily reduces the claimed damages). Further, in *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817 (8th Cir. 2011), the Court concluded that subject matter jurisdiction existed even where the amount sought under an insurance policy was arguably only $62,500, because Plaintiff still maintained a claim for vexatious conduct against the Defendant which could raise the amount-in-controversy to above the jurisdictional threshold. *See id*. at 825-826 ("[W]e credit the good-faith allegations of her complaint and conclude jurisdiction is proper."). Finally, in

another action cited by the Defendant, *Capital Law v. Viar*, 338 F.Supp.2d 891 (W.D.Tenn. 2004), the Court found that where the value of the claim depended on the ever changing exchange rate of English pounds to American dollars, the value of the claim on the day the action is filed controls the subject matter jurisdiction analysis. *Id*. These cases cited by the Defendant all *support* jurisdiction in this action.

Additionally, the other cases cited in support of dismissal by the Defendant are easily distinguishable. *See Mario v. Centex Homes*, 2006 WL 560150 (M.D.Fla.2006) (allegations of the complaint did not seek federal court jurisdiction and Defendant removed to federal court when it knew federal jurisdiction would not be proper); *Jones v. Knox Exploration Corp.,* 2 F.3d 181 (6th Cir. 1993) (the court found that plaintiff's admission that amount-in-controversy did not reach the threshold required dismissal); *Holland v. Lowe's Home Centers, Inc.*, 198 F.3d 245 (Table), 1999 WL 993959 (6th Cir 1999) (finding dismissal for lack of subject matter jurisdiction proper where damages under the only statute available were capped at $10,000 and Plaintiff "directly conceded that damages will not be greater than $75,000").

The final case cited by the Defendant, *Heichman v. American Tel. & Tel. Co.*, 943 F.Supp. 1212 (C.D.Cal.1995), was a pre-CAFA action, where the Court found that "it is well-settled that in a class action such as the instant case, each plaintiff must independently satisfy the jurisdictional minimum." *Id.*  CAFA abrogated the rule against aggregating claims to reach the jurisdictional minimum for federal court jurisdiction.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 571, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); 28 U.S.C. § 1332(d)(6).

Not one case cited by the Defendant supports the notion that dismissal is proper in this instance.  Indeed, three of the seven actually support denial of the motion to dismiss.

## **CONCLUSION**

Plaintiff's well-pled and good faith allegations in the Complaint should stand and control in this action.  The law is clear that jurisdiction is determined when the complaint is filed and subsequent events to not divest the Court of subject matter jurisdiction.  Defendant cannot show that it would be impossible for Plaintiff to recover $5 million or more in this litigation.  In reality, Plaintiff will most likely recover far in excess of $5 million when monetary damages, injunctive relief, and attorney's fees and costs are included.  Finally, Defendant completely ignores any of these recoveries aside from damages in its Motion, including Plaintiffs plenary right to appeal.

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

s/ Lance A. Harke
Lance A. Harke, P.A.
Florida Bar No. 863599
lharke@harkeclasby.com
Howard M. Bushman, P.A.
Florida Bar No. 0364230
hbushman@harkeclasby.com
Alison C. Harke
Florida Bar No. 871291
aharke@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of January, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

*s/ Lance A. Harke*

CASE NO.: 1:13-CV-21525-JIC

## SERVICE LIST

Dale J. Giali (*Pro Hac Vice*)
California State Bar No. 150382
DGiali@mayerbrown.com
Michael L. Resch (*Pro Hac Vice*)
California State Bar No. 202909
MResch@mayerbrown.com
Andrea M. Weiss (*Pro Hac Vice*)
California State Bar No. 252429
AWeiss@mayerbrown.com
**MAYER BROWN LLP**
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel: 213-229-9500
Fax: 213-625-0248
*Attorneys for Defendant Amy's Kitchen, Inc.*

*Served Via CM/ECF Transmission*

Lawrence Silverman, Esq.
Florida Bar No. 7160
lawrence.silverman@akerman.com
Sandra J. Millor, Esq.
Florida Bar No. 13742
sandra.millor@akerman.com
**AKERMAN SENTERFITT**
One S.E. Third Avenue — 25th Floor
Miami, FL 33131-1714
Telephone: 305-374-5600
Facsimile: 305-374-5095
*Attorneys for Defendant Amy's Kitchen, Inc.*

*Served Via CM/ECF Transmission*